[No. A022007. First Dist., Div. Five. Oct. 30, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
TRACY LEE REYNOLDS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*See footnote, *post,* page 991.

COUNSEL

Alys Briggs, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Derald E. Granberg, Martin S. Kaye, Ronald E. Niver and Clifford K. Thompson, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

HANING, J.—Defendant Tracy Lee Reynolds appeals a conviction by jury verdict of first degree murder (Pen. Code, § 187) with the special circumstance that it was committed during the course of a robbery.* (Pen. Code, § 190.2, subd. (a)(17)(i).) He was also convicted of robbery (Pen. Code, § 211), burglary (Pen. Code, § 459) and found to have been armed (Pen. Code, § 12022, subd. (a)), to have personally used a firearm (Pen. Code, § 12022.5) and to have inflicted great bodily injury. (Pen. Code, § 1203.075.) He appeals primarily on the ground the trial court failed to instruct the jury as to the intent to kill required to support a finding of felony murder special circumstances under Penal Code section 190.2. In our original decision we held that defendant's concession of his intent to kill his victim overcame the instructional error, and we affirmed the conviction of first degree murder and the special circumstance finding. Defendant there-

---

*Pursuant to rules 976 and 976.1, California Rules of Court, this opinion is certified for publication except for part II, and the last two paragraphs of part III.

after petitioned the Supreme Court for review. His petition was granted and the cause was transferred back to this court for reconsideration in light of *People* v. *Silbertson* (1985) 41 Cal.3d 296 [221 Cal.Rptr. 152, 709 P.2d 1321], decided subsequent to our original decision. For reasons hereafter set forth, we affirm.

Fred and Elaine Ellis owned Fredel's Fashions, a lady's ready-to-wear store in Santa Rosa. When Mr. Ellis arrived at the store at approximately 5 p.m. on August 26, 1981, to pick up his wife, age 58, he found her lying face down in a rear closet, her head bloody and covered with clothes. He immediately called an ambulance. At 7 p.m., Mrs. Ellis was pronounced dead from a brain hemorrhage caused by a bullet fired at close range into the back of her head. All the store's cash, later determined to be about $130, was missing from the cash drawer.

Defendant lived in Sebastopol with his twin sister and her two children. When the four of them returned home on the evening of the murder, defendant was anxious to watch the news on television. The news ended without mentioning the item in which he was interested. He then told his sister there had been a shooting "downtown" and he had seen a woman taken away in an ambulance. He twice telephoned the hospital to ask the victim's condition, once saying he was her grandson and once that he was a concerned citizen.

The following day, when his sister returned from work, defendant had a newspaper clipping about the murder. He told her he had killed Mrs. Ellis during the course of the robbery, and that he "didn't feel bad about it, he had no remorse." Defendant's sister contacted a police acquaintance, Sebastopol Police Officer Dennis Colthurst. Colthurst asked the Santa Rosa police to send officers to the Sebastopol station to interview defendant's sister in Colthurst's presence. After detectives interviewed her, she permitted them to conceal a tape recorder in her car when she went to pick up defendant. She returned to the station about 45 minutes later with his admission of the robbery and murder cn the tape. Defendant was arrested shortly thereafter. Blood and urine samples taken from him were negative for drugs and alcohol. He was alert, rational and cooperative during the booking procedure. After waiving his rights he made the following recorded statement to police in which he admitted robbing and killing Elaine Ellis:

He had been in Fredel's Fashions the day before the murder to look at clothes for his sister. A saleswoman, later identified as Lois Weber, waited on him. He did not buy anything, but told the saleswoman he would come back later to make some purchases. *He stated that when he walked into Fredel's the next day, his purpose was to rob the store and kill the lady*

*because he did not have a mask and he knew she would identify him.* He said he needed money to pay his share of the rent. Weber was not in the shop on the day of the offense. After Mrs. Ellis, who was there alone, showed him some clothes, he asked to look at wigs. When Mrs. Ellis turned to select some, he pulled out a concealed gun and told her to be quiet and he would not hurt her; all he wanted was the money. He told her to lie down in a rear storage closet, but she told him he would not be able to open the cash drawer by himself. He allowed her to open the drawer, telling her not to sound any alarm or he would kill her. Defendant pushed the drawer partially shut so no passersby would see it wide open. He then told Mrs. Ellis to return to the closet and lie down. He put some clothes over her head, pulled back the hammer of the gun, and shot her in the back of the head. *"I made up my mind to kill her so that she wouldn't be able to identify me."* He ran out of the closet, took the money from the cash drawer, then returned to the closet to make certain the victim was dead (he kicked her to be certain), closed the closet door and walked out of the store. He also took the victim's wallet, containing $2. He stated he had stolen the gun from a neighbor's house *for the purpose of committing a robbery.* Following the robbery he threw the wallet away and concealed the gun at his sister's home. He said he told his sister that *"I hoped that* [the victim] *would die, that way I wouldn't get caught."*

At trial, Weber corroborated defendant's visit to the store on the day preceding the murder, testifying no one else was in the store at the time. She said defendant appeared rational and cooperative during the 10-minute period he was in the store, but he appeared more interested in looking around the store than looking at the merchandise. Weber saw defendant at the front door after she had closed the shop for the day, but she believed he did not see her.

The People sought a first degree murder conviction on the dual basis the murder was willful, deliberate and premeditated, and also that it was a felony murder occurring during the course of a burglary or robbery. (Pen. Code, § 189.)[1] The special circumstance was obtained on the similar grounds that the murder occurred during the course of a robbery.[2] (Pen. Code, § 190.2, subd. (a)(17)(i).)[3] The trial court instructed properly on both

---

[1] Penal Code section 189, states, in relevant part: "All murder which is . . . committed in the perpetration of . . . robbery . . . [or] burglary . . . is murder of the first degree . . . ."

[2] The People sought special circumstances based on burglary as well as robbery, but the finding by the jury was based on the robbery.

[3] Penal Code section 190.2, subdivision (a), states, in relevant part: "The penalty for a defendant found guilty of murder in the first degree shall be death or confinement in the state prison for a term of life without the possibility of parole in any case in which one or more of the following special circumstances has been charged and specially found . . . to

theories of murder, but did not advise the jury that an intent to kill was required in order to find the felony-murder special circumstance to be true.

I

The felony-murder concept affects both the degree of murder and the existence of the special circumstances based thereon, but the intent requirements differ depending on the situation in which it is applied. The felony-murder rule of Penal Code section 189 affects the degree of murder by eliminating the need to prove premeditation, deliberation or malice. It provides generally that murder occurring during the course of any of the felonies specified therein shall be of the first degree.[4] The only intent required for the killer to be convicted of first degree felony murder is the specific intent to commit the underlying felony. (*People* v. *Dillon, supra,* 34 Cal.3d at p. 475.) The felony-murder special circumstance of Penal Code section 190.2, subdivision (a)(17) operates to trigger punishment of either death or life imprisonment without possibility of parole.

*Carlos* v. *Superior Court* (1983) 35 Cal.3d 131 [197 Cal.Rptr. 79, 672 P.2d 862], decided after the trial in the instant case, held that the felony-murder special circumstances (Pen. Code, § 190.2, subd. (a)(17)) require proof that the defendant intended to kill. (*Id.,* at p. 154.) *People* v. *Garcia* (1984) 36 Cal.3d 539, 544 [205 Cal.Rptr. 265, 684 P.2d 826], held the *Carlos* decision applicable to all cases not yet final. *Garcia* also held that, with certain exceptions, failure to properly instruct the jury concerning intent renders a special circumstance finding reversible per se. (*People* v. *Garcia, supra,* 36 Cal.3d at pp. 554-557.) Since the trial of the instant case preceded the *Carlos* decision, the trial court herein did not instruct that intent to kill is required for a special circumstance finding. At the time of our original decision we concluded reversal was required unless the case fell within one of *Garcia*'s specific exceptions to *Carlos. Garcia*'s rule of per se reversal is based solely on federal precedent as it then existed. (*People* v. *Garcia, supra,* 36 Cal.3d at pp. 554, 555, fn. 10; *People* v. *Croy* (1985) 41 Cal.3d 1, 13 [221 Cal.Rptr. 592, 710 P.2d 392].) *Garcia*'s cornerstone was *Sandstrom* v. *Montana* (1979) 442 U.S. 510 [61 L.Ed.2d 39, 99 S.Ct. 2450], wherein the United States Supreme Court reversed a murder conviction where the defense was diminished capacity, and the trial court had instructed the jury that the law presumed the defendant intended the ordinary consequences of his voluntary acts. (See *People* v. *Garcia, supra,* 36 Cal.3d

be true: . . . [¶] (17) The murder was committed while the defendant was engaged in . . . the commission of, attempted commission of, or the immediate flight after committing or attempting to commit the following felonies: [¶] (i) Robbery in violation of Section 211."

[4]Justice Mosk provides a comprehensive review of California's felony-murder rule in *People* v. *Dillon* (1983) 34 Cal.3d 441 [194 Cal.Rptr. 390, 668 P.2d 697].

at pp. 550-551.) In *Connecticut* v. *Johnson* (1983) 460 U.S. 73 [74 L.Ed.2d 823, 103 S.Ct. 969], the high court affirmed a decision of the Connecticut Supreme Court reversing convictions of attempted murder and robbery on the ground the trial court committed *Sandstrom* error by instructing the jury that the defendant was conclusively presumed to intend the natural and necessary consequences of his act.

*Connecticut* v. *Johnson* was a plurality decision which failed to resolve an issue left open by *Sandstrom:* whether jury instructions violative of *Sandstrom* principles are reversible per se, or subject to review under the harmless error standard of *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824].[5] This unresolved issue caused confusion and conflicting interpretation in the lower courts, and created the problem with which the California Supreme Court was confronted in *Garcia*.

Since remand, the United States Supreme Court has decided *Rose* v. *Clark* (1986) 478 U.S. 570 [92 L.Ed.2d 460, 106 S.Ct. 3101], holding that *Chapman*'s harmless error analysis applies to *Sandstrom* error. "'[W]e have repeatedly reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt.' [Citation.]" (*Rose* v. *Clark, supra,* 478 U.S. at p. — [92 L.Ed.2d at p. 469, 106 S.Ct. at p. 3105].)

"[W]hile there are some errors to which *Chapman* does not apply, they are the exception and not the rule. [Citation.] Accordingly, if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless error analysis. The thrust of the many constitutional rules governing the conduct of criminal trials is to ensure that those trials lead to fair and correct judgments. Where a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed." (*Id.,* 478 U.S. at pp. —— [92 L.Ed.2d at p. 471, 106 S.Ct. ·at pp. 3106-3107].) "[O]ur harmless error cases do not turn on whether the defendant conceded the factual issue on which the error bore. . . . 'Chapman* mandates consideration of the entire record prior to reversing a conviction for constitutional errors that may be harmless.' [Citation.] The question is whether, 'on the whole record . . . the error . . . [is] harmless beyond a reasonable doubt.'" (*Id.,* 478 U.S. at p. — [92 L.Ed.2d at p. 474, 106 S.Ct. at p. 3109].)

---

[5]"[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." (*Chapman* v. *California, supra,* 386 U.S. at p. 24 [17 L.Ed.2d at pp. 710-711].)

However, *Rose* v. *Clark* did not specifically decide whether the failure to instruct that intent is a necessary element of the offense is equally subject to the harmless error standard applicable to the presumption instructions of *Sandstrom* and *Connecticut* v. *Johnson.* "Nor is *Sandstrom* error equivalent to a directed verdict for the State.[8] When a jury is instructed to presume malice from predicate facts, it still must find the existence of those facts beyond a reasonable doubt. [Citation.] In many cases, the predicate facts conclusively establish intent, so that no rational jury could find that the defendant committed the relevant criminal act but did not *intend* to cause injury. . . ." Footnote 8 of the quoted passage provides as follows: "[8]'Because a presumption does not remove the issue of intent from the jury's consideration, it is distinguishable from other instructional errors that prevent a jury from considering an issue.' [Citations.]" (*Rose* v. *Clark, supra,* 478 U.S. at p. — [92 L.Ed.2d at p. 472, 106 S.Ct. at p. 3107].)

In any event, we conclude that regardless of whether we apply *Chapman*'s harmless error standard or *Garcia*'s exceptions, the judgment should be affirmed, since we believe that *Garcia*'s exceptions also support affirmance under *Chapman* analysis.

■ One of *Garcia*'s exceptions, which we conclude is applicable here, occurs when the defendant concedes the issue of intent. (*People* v. *Ramos* (1984) 37 Cal.3d 136, 146-147 [207 Cal.Rptr. 800, 689 P.2d 430]; *People* v. *Whitt* (1984) 36 Cal.3d 724, 734-735 [205 Cal.Rptr. 810, 685 P.2d 1161]; *People* v. *Garcia, supra,* 36 Cal.3d at p. 554.) The analysis supporting the exception is detailed in *Garcia, Whitt* and *Ramos* and requires no repetition by us.

The defense below was twofold. First, defendant acknowledged killing Mrs. Ellis, but claimed that due to his diminished capacity, the result of a mental disorder and alleged drug use, he was unable to form the mental state necessary for first degree murder. Alternatively, he argued that his purpose in entering the store was to kill a woman, and that the robbery which occurred was incidental to that killing. Therefore, he contended, the special circumstance allegation could not be true because the killing did not occur during the commission of a felony, in this case, a robbery. In his opening statement defense counsel stated: "[T]here is little if any conflict in our position as opposed to the position of [the prosecutor], save and except the real reason why he went in. We have no quarrel with the fact that [defendant] in fact killed Mrs. Ellis. We have no quarrel with the fact that he took money from Mrs. Ellis. We have no quarrel with the fact that he made statements admitting that he was there and did what he did. We have no quarrel with the . . . tape where he had related the matter to his sister, his twin sister . . . . I would like to for the moment give you some

background leading up to the killing which will have relevance on his intent, his ability to be willful, deliberate, premeditated, to harbor malice afore-thought." Defense counsel then described defendant's background, setting the stage for a diminished capacity defense. He then stated his principal position: *"We will show [defendant] entered that store at that time and place to kill, to kill, to take the life of Mrs. Ellis. That was the primary reason. That's why he went in."*

Francis Crinella, a psychologist and witness for defendant, was of the opinion defendant "had gone into the store in my mind to kill an adult woman, and that was his main idea, his ruminative thought, his preoccu-pation . . . ." In Crinella's talks with defendant "it became apparent that seeking money was not a major or even significant consideration in this act. It was nice to have the money, but it was incidental to what he was about." The day before the killing he went into four shops "with the purported conscious intent of looking for a place to rob. But . . . looking for a place where there would be a woman that he could kill." In Crinella's opinion, defendant "may well have killed" Lois Weber the previous day had Fredel's Fashions still been open when he returned at 5 p.m. He testified that de-fendant "thought quite a good deal about what he was going to do [i.e., kill a woman]." Crinella confirmed that defendant intentionally pointed the gun at the victim's head from close range and pulled the trigger; *that he cognitively knew what he was doing and understood the consequences of his actions.*

A defense psychiatrist, Robert Aaron, testified that in his opinion "this was a willful killing and that *he intended to do the killing,* that within the framework of the law, . . . deliberation, premeditation and malice afore-thought were not present." Aaron believed defendant was "looking to kill a woman," and had "cased" four women's shops the day before he killed Mrs. Ellis. *"I believe very strongly based on this long history that his intention was to kill* . . . the money was secondary." Defendant did not like women, and *after he had stolen the cash receipts, he went back to the closet and kicked the victim to be certain she was dead.*

Martin Blinder, a psychiatrist, testified for the People. In his opinion defendant had a mental disorder, but not to such an extent that he would not be able to predict the results which would flow from his actions. Blinder testified that defendant did not have a mental disorder that prevented him from deciding upon and executing a purposeful act. Blinder believed de-fendant was able to premeditate and deliberate, and that he could also form the intent to steal.

For some time prior to the murder defendant had discussed his plans with his sister and with a friend, Deanna Matthias. He told his sister he was

thinking about committing a robbery to obtain money. He even asked his sister if he could rob her when she was transferring her employer's cash receipts to the bank, but she refused. He advised his sister that he had been observing a woman depositing funds in a bank night depository. *He told her that if he robbed anyone he would kill the victim "because that way there wouldn't be a witness left to identify him."* He also advised Matthias of his plans to commit a robbery, and wanted her husband to join him. He told her he had verified a number of likely stores in town which would be "pushovers" because they were run by elderly people *who would be easy to rob, and that he would kill them to prevent his identification.* He asked Matthias to drive him to the residence of a former employer so he could steal a gun for use in the robbery.

In summary, all the evidence points to a planned, deliberate execution, in which the victim's life was intentionally taken, among other reasons, to prevent her from identifying defendant as the person who robbed her.

In his closing argument, defense counsel again emphasized that "[o]ur *position is and has been he went in that store to kill, to take her life. . . . I* assume you have to find that's what he did. You are probably thinking, I don't know—this is the screwiest case. It seems to me if he went in to rob somebody and then for some reason killed somebody, that is not as bad as deliberately walking in with the thought preceding it and taking this poor woman's life. Whether it's crazy or not, that's what the law is. . . . I wish you would just at least discuss the law about diminished responsibility or capacity. . . . we've got history from birth which would support that. *But I'm begging you, begging you at least to find that he killed her and that was the reason he went in the store. He may have gone in to rob too but he went in to kill her."*

Thus, although defendant alternatively advanced a diminished capacity defense, he specifically conceded his intent to kill. This could not credibly be avoided in light of the testimony of his own medical experts, each of whom testified that he intended to kill, his own confession that he killed in order to prevent being identified, and his prior statements that he intended to commit a robbery and kill the victim to eliminate witnesses.

Defendant's tactic was to attempt to persuade the jury that the murder was his primary motive in entering the store, and that the taking of the cash was merely a coincidental afterthought. Were this found to be true he would have avoided the operation of the felony-murder rule of Penal Code section 189, since a murder which precedes the formation of the intent to rob or steal is not within the perpetration of robbery or burglary. (*People* v. *Gonzales* (1967) 66 Cal.2d 482, 486 [58 Cal.Rptr. 361, 426 P.2d 929]; *People* v.

*Jeter* (1964) 60 Cal.2d 671, 676-677 [36 Cal.Rptr. 321, 388 P.2d 355]; *People* v. *Carnine* (1953) 41 Cal.2d 384, 388 [260 P.2d 16].) Avoiding the felony-murder rule or convincing the jury he lacked the capacity to deliberate or premeditate might at least have reduced the murder to second degree. This in turn would have prevented a finding of special circumstances, which attach only to first degree murder convictions. (Pen. Code, § 190 et seq.) Even if convicted of deliberate and premeditated murder, if he was able to prove that his principal intention was to take a life and that any robbery or burglary was "merely incidental to the murder," he would still avoid the special circumstance of murder committed during the course of a robbery. (*People* v. *Green* (1980) 27 Cal.3d 1, 61 [164 Cal.Rptr. 1, 609 P.2d 468].)

Defendant now argues that his concession of intent was insufficient to come within *Garcia*'s exception to *Carlos,* since he did not specifically concede his intent to kill was for the express purpose of furthering the robbery. We do not interpret the exception to be quite so narrowly defined. The cases discussing it speak only in terms of an intent to kill (*People* v. *Ramos, supra,* 37 Cal.3d at pp. 146-148; *People* v. *Whitt, supra,* 36 Cal.3d at pp. 734-735; *People* v. *Garcia, supra,* 36 Cal.3d at pp. 545, 547, 552, 554-556; *Carlos* v. *Superior Court, supra,* 35 Cal.3d 131, *passim,* and especially pp. 153-154), which is logical. Defendant confuses the felony-murder rule of Penal Code section 189 with the felony murder special circumstance of Penal Code section 190.2, subdivision (a)(17). Whether the robbery was truly an afterthought or merely incidental to the killing was a question for the jury to resolve. In order to invoke the felony-murder *special circumstance* for robbery as contained in Penal Code section 190.2, subdivision (a)(17)(i), the intent which must be established is the intent to kill. (*Carlos* v. *Superior Court, supra,* 35 Cal.3d 131.) ■ The intent to commit the underlying felony of robbery in order to fix the degree of murder is a preliminary finding which must be made before the murder can be classified as first degree under the felony-murder rule of Penal Code section 189. Neither defense expert testified that the plan or intent to rob was formulated after the murder. They opined that the robbery was a secondary motivating factor, and that defendant's primary intention was to commit murder. In any event, the jury was given an instruction prepared by defendant which covered his theory.

The jury was instructed, at defendant's specific request: "To find that the special circumstance, referred to in these instructions as murder in the commission of robbery is true, it must be proven that the murder was committed while the defendant was engaged in the commission or attempted commission of a robbery, that the murder was committed in order to carry out or advance the commission of the crime of robbery or attempted robbery

or to facilitate the escape therefrom or to avoid detection. If you have a reasonable doubt whether the murder was committed in order to carry out these purposes, you must find that the special circumstance is not true. In other words, the special circumstances referred to in these instructions is not established if you find that the defendant's objective was to kill and the robbery was merely incidental to the commission of the murder." The jury was also properly instructed that it could consider the special circumstance allegation only if it found defendant guilty of first degree murder.

The jury found defendant had the specific intent to commit the robbery of which he was convicted. It also found that the murder was committed during the course of that robbery, and that the robbery was not merely incidental to the murder. Substantial, if not overwhelming, evidence supports these findings. The question is whether defendant's concession of his intent to kill is sufficient to come within *Garcia*'s exception to *Carlos* in light of *People* v. *Silbertson, supra,* 41 Cal.3d 296.

In *Silbertson* the defendant was convicted of first degree murder and robbery, and a special circumstance allegation that the murder was committed during the course of a robbery was found true. As in the instant case, the *Silbertson* jury "was instructed on two theories on which it could convict defendant of first degree murder: premeditated murder and felony murder." (*People* v. *Silbertson, supra,* 41 Cal.3d at p. 303.) The defense argued during the guilt phase that the murder was intentional, deliberate and premeditated and that the robbery was secondary or incidental to the murder. The trial court did not instruct the jury that it had to find that the defendant intended to kill in order to find the robbery special circumstance true.

The *Silbertson* court held that "[t]he only possible exception to the rule of per se reversal [required when the trial court fails to instruct on intent per *Carlos*] which might possibly apply to this case is the so-called *Cantrell-Thornton*[6] exception which, in *Garcia,* we formulated as follows: '[T]here may . . . be cases where the parties recognized that intent to kill was in issue, presented all evidence at their command on that issue, and in which the record not only establishes the necessary intent as a matter of law but shows the contrary evidence not worthy of consideration.' [Citation.]" (*People* v. *Silbertson, supra,* 41 Cal.3d at p. 306.) *Silbertson* summarily rejected the exception which applies where the defendant concedes intent. "*Garcia* recognized that *Connecticut* v. *Johnson* (1983) 460 U.S. 73 [74 L.Ed.2d 823, 103 S.Ct. 969], also allowed for an exception '"if the defendant conceded the issue of intent."'" ([*People* v. *Garcia, supra,*] 36 Cal.3d

---

[6]*People* v. *Cantrell* (1973) 8 Cal.3d 672 [105 Cal.Rptr. 792, 504 P.2d 1256]; *People* v. *Thornton* (1974) 11 Cal.3d 738 [114 Cal.Rptr. 467, 523 P.2d 267].

at p. 555.) Obviously, however, the court was not addressing a situation where the 'concession' is triggered by an erroneous perception that it costs nothing and may, indeed, be to the defendant's advantage." (*People* v. *Silbertson, supra,* at p. 306, fn. 12.) This statement interpreting federal precedent is in accord with similar language in *Garcia:* "If the defendant in a pre-*Carlos* trial was unaware that intent to kill was an element of the felony-murder special circumstance, he might through ignorance fail to present evidence worthy of consideration on that matter. We could not in such cases affirm a special circumstance finding on the ground that defendant did not introduce evidence sufficient to raise a material issue." (*People* v. *Garcia, supra,* 36 Cal.3d at p. 556.) But *Garcia* went on to explain that "there may also be cases where the parties recognized that intent to kill was in issue, presented all evidence at their command on that issue, and in which the record not only establishes the necessary intent as a matter of law but shows the contrary evidence not worthy of consideration. [Fn.] In such a case the reasoning of *Cantrell* and *Thornton* may avoid a meaningless retrial." (*Ibid.*)

In our view *Silbertson* is distinguishable, and does not compel reversal of the instant case. Our explanation may best be understood if we preliminarily examine the case as it appeared at the time of trial. First, defendant had given a complete and valid confession to the police in which he not only admitted the murder and robbery, but also confirmed that he intentionally killed the victim to prevent her from later identifying him.[7] Second, the prosecution had witnesses to whom defendant had disclosed his intentions of robbery-murder prior to the offense. Third, the prosecution had at least one witness who testified that defendant had "cased" the victim's store the previous day. Fourth, although defendant had received extensive medical examinations concerning a diminished capacity defense, his intent to kill could not be negated. Finally, defendant's past record was poor, and unlikely to help him in the eyes of the jury: he had a lengthy record of juvenile and adult offenses including rape, burglary, auto theft and escape, he had served previous commitments to the Youth Authority and the Department of Corrections, he had violated parole in the past, was on parole from the Department of Corrections at the time of the instant offense, and had never displayed any remorse for his criminal conduct. After shooting the present victim through the back of the head, execution style, and removing the cash from the register, he returned to the victim and kicked her to be certain she was dead. He also stole her wallet containing $2. He then disposed of the empty wallet and went calmly across the street to a fast food restaurant because he was hungry. Thereafter, he hid the gun to conceal

[7]Defendant certainly understood the import of his confession. He acknowledged to the police that he was confessing to a "gas chamber offense."

his involvement in the crime. He revealed the same facts to the physicians who examined him as he did to the police. Those facts portray a remorseless individual who not only planned a robbery against a helpless victim, but displayed no compunction about murdering her to prevent her from identifying him afterward.

Given these facts, the defense options were severely limited. Defendant could not deny the killing or the robbery without totally destroying his credibility. In order to present the diminished capacity defense the intent had to be conceded, because the defense medical experts each concluded that the defendant's principal intention in entering the store was to commit murder. Consequently, defense counsel took the only road open to him. He conceded the obvious and attempted to turn those facts to his own advantage. Thus, unlike *Silbertson*, defendant had no reasonable alternatives to negate intent.[8] Also unlike *Silbertson*, there should be no reasonable doubt about the existence of defendant's intent to kill. In addition to the uncontradicted medical evidence, defendant admitted his intent to the police, his sister and Ms. Matthias, and did not deny it during either the guilt or penalty stages of the trial. He does not now, nor did he during the trial, contend that his statements to the police, the examining physicians or any of the witnesses to whom he revealed his intentions are incorrect or inadmissible. Finally, as we next explain, the *Cantrell-Thornton* exception which was not established in *Silbertson* was present in the instant case as a result of the diminished capacity defense.

■ Another exception to *Garcia*'s rule of per se reversal occurs when "the parties recognized that intent to kill was in issue, presented all evidence at their command on that issue, and in which the record not only establishes the necessary intent as a matter of law but shows the contrary evidence not worthy of consideration." (*People* v. *Garcia, supra*, 36 Cal.3d at p. 556, fn. omitted.) To examine this exception we necessarily venture into "the tangled thicket of factual questions that must be answered in every [such] inquiry . . . ." (*People* v. *Silbertson, supra*, 41 Cal.3d at p. 308; dis. opn. of Mosk, J.) However, we think the instant case demonstrates the *Cantrell-Thornton* exception about as conclusively as possible in a felony murder case.

First, it is obvious that the parties "recognized that intent to kill was in issue." They each presented evidence on the issue; both sides presented expert medical witnesses and, in addition, the prosecution presented de-

---

[8]The *Silbertson* court noted that the defendant in that case did not present a diminished capacity defense. He also testified, during the penalty phase, that he had no intention of killing his victim.

fendant's own admissions and his detailed confession describing his admitted intent to kill. While the intent to kill was in issue under the instructions given below only in connection with the prosecution's case on willful, deliberate and premeditated murder as opposed to felony murder, the parties' recognition of the intent element is important to an analysis of the remaining factors comprising the exception.[9]

Second, whether the parties "presented all evidence at their command" on the intent issue is always open to speculation or the possibility that they did not, absent a stipulation. However, the probability that all such evidence was presented is extremely high here.[10] Defendant was on trial for his life, represented by an experienced and skillful public defender. A diminished capacity defense was presented which encompassed not only defendant's mental state at the time of the offense, but his complete medical history since birth. Medical records from the time of his birth to the time of trial were examined and discussed. These included not only records from family doctors and treating physicians, but also those from the various institutions with which the defendant had been connected, including the juvenile court, the California Youth Authority and the Department of Corrections. The only conclusion which can reasonably be drawn under these circumstances is that the parties had access to and presented all relevant available evidence on the issue of intent.

The third factor under *Cantrell-Thornton* analysis is whether "the record not only establishes the necessary intent as a matter of law but shows the contrary evidence not worthy of consideration." We have no difficulty in concluding that this factor is satisfied. "In many cases, the predicate facts conclusively establish intent, so that no rational jury could find that the

---

[9]Since the People introduced evidence to prove the elements of traditional first degree murder, i.e., deliberation, premeditation and malice, specific intent was in issue not only as to the murder count, but also as to the burglary and robbery counts, of which defendant was also found guilty. Although the specific intent for burglary and robbery is not the same as that for murder, it emphasizes the fact that defendant's mental state was in issue, since all the counts involved specific intent crimes. The jury also returned a finding that defendant inflicted great bodily injury on the victim. The *only* act committed by defendant which could *possibly* have led to great bodily injury was the *single* act of shooting the victim in the back of the head. The jury was appropriately instructed that a finding of great bodily injury requires specific intent.

Although the allegation was stricken by the trial court at time of sentencing, the trial court was required to do so at the time only because of the murder conviction. By its terms, Penal Code section 12022.7 does not apply to murder or manslaughter. However, it serves to demonstrate that defendant's mental state was very much in issue.

[10]Experienced criminal lawyers generally obtain and present all helpful evidence available when presenting a diminished capacity defense, particularly in capital cases. The trial record reveals that this occurred here. Because of defendant's frequent contact with authorities and the amount of time he had previously spent in custody, it is unlikely that any significant medical history was overlooked.

defendant committed the relevant criminal act but did not *intend* to cause injury." (*Rose* v. *Clark, supra,* 478 U.S. at p. — [92 L.Ed.2d at p. 472, 106 S.Ct. at p. 3108].) "[I]t would defy common sense to conclude that an execution-style killing . . . was committed unintentionally." (*Id.,* at p. — , fn. 10 [92 L.Ed.2d at p. 473].) "It would be an extraordinary perversion of the law to say that intent to kill is not established when a felon, engaged in an armed robbery, admits to shooting his victim in the back . . . ." (*Hopper* v. *Evans* (1982) 456 U.S. 605, 613 [72 L.Ed.2d 367, 374, 102 S.Ct. 2049].)[11]

We are not oblivious to the importance of the element of intent and the requirements of proof in any specific intent crime, especially in a special circumstance murder. (See *People* v. *Modesto* (1963) 59 Cal.2d 722, 730-731 [31 Cal.Rptr. 225, 382 P.2d 33].) ▪ But we are satisfied after reviewing the entire record in this case that the error was harmless beyond a reasonable doubt, and that the *Garcia* exceptions we have discussed are applicable. "The harmless-error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, [citation], and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error. Cf. R. Traynor, The Riddle of Harmless Error 50 (1970) [Ohio State Univ. Press] ('Reversal for error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it.')." (*Delaware* v. *Van Arsdall* (1986) 475 U.S. 673, 681 [89 L.Ed.2d 674, 684-685, 106 S.Ct. 1431, 1436-1437].)

This does not end our inquiry, however, since *Chapman* and *Garcia* analysis merely resolve the applicability of federal standards, and *Garcia* specifically took "no position on whether, in the absence of controlling federal authority, we would apply the California prejudicial per se test of [*People* v.] *Modesto* [*supra,* 59 Cal.3d 722] or some other, less stringent, test." (*People* v. *Garcia, supra,* 36 Cal.3d at p. 555, fn. 10.) However, *Garcia* also recognized that decisions following *Modesto* have "relaxed the rigidity of the *Modesto* rule." (*Id.,* at p. 555.) *People* v. *Sedeno* (1974) 10 Cal.3d 703 [112 Cal.Rptr. 1, 518 P.2d 913], *People* v. *Cantrell, supra,* 8 Cal.3d 672 and *People* v. *Thornton, supra,* 11 Cal.3d 738 were cited as examples of exceptions to *Modesto*'s rule of per se reversal. We are satisfied that a concession of intent is equally acceptable as an exception.

---

[11]At one point when defendant was first confessing the offense to his sister he stated that the gun went off *accidentally*. However, he later admitted he intentionally killed his victim in accord with his preconceived plan. Except for this initial reference which he repudiated almost immediately thereafter, his intent is clearly and unequivocally established. Hence, the earlier reference does not appear to be "worthy of consideration."

"The well-being of the law encompasses a tolerance for harmless errors adrift in an imperfect world." (Traynor, The Riddle of Harmless Error (1970) Foreword.) We are confronted with the following *undisputed* facts from which we conclude that the instructional error herein was harmless beyond a reasonable doubt: (1) defendant's advance planning of the robbery and murder, (2) uncontradicted medical testimony, much from defendant's own experts, that he intended to murder his victim, (3) defendant's actions in ordering the victim to lie down in the rear closet, after which he fired a bullet at near point-blank range into the back of her head, (4) defendant's return to the victim after he rifled the cash register, to kick her to be certain she was dead and (5) defendant's complete confession to the police that he intended to commit murder to eliminate the witness. No rational jury could reasonably find that intent to kill did not exist. As a consequence, we conclude that affirmance is also required under state standards.

## II*

. . . . . . . . . . . . . . . . . . . . . . . .

## III

The judgment of conviction of first degree murder with special circumstance is affirmed.

. . . . . . . . . . . . . . . . . . . . . . . .†

Low, P. J., and King, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 26, 1987.

---

*See footnote, *ante,* page 991.

†These paragraphs are not certified for publication. (See fn., *ante,* p. 991.)