[No. D004485. Fourth Dist., Div. One. Mar. 29, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
ALBERT HUTCHINS, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rules 976.1 and 976(b), this opinion is certified for publication with the exception of parts I, II, III, V, VI and VII.

**COUNSEL**

Mark D. Greenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Pat Zaharopoulos and Randa McDaniel Trapp, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BENKE, J.**—Albert Hutchins appeals his convictions for robbery (Pen. Code,[2] § 211), burglary in the first degree (§ 459), assault with a deadly weapon (§ 245, subd. (a)(1)), three counts of forcible oral copulation (§ 288a, subd. (c)), and two counts of forcible rape (§ 261, subd. (2)). The jury found true an allegation of weapons use (§ 12022.3) during one of the acts of oral copulation. Hutchins admitted a prior out-of-state rape conviction pursuant to sections 667, subdivision (a), 667.5, subdivision (a), and 667.6, subdivision (a).

The trial court imposed the upper term of five years for the robbery conviction as well as a full, consecutive term of eight years on one of the

---

[2] All statutory references are to the Penal Code unless otherwise specified.

oral copulation counts which was further enhanced with the weapons use finding. Full, consecutive terms of eight years were imposed for the rape convictions. A five-year enhancement pursuant to section 667.6, subdivision (a), was added based on appellant's prior conviction. Sentence on the remaining oral copulation counts was imposed concurrently. Sentencing on the burglary and assault convictions was stayed pursuant to section 654.

Hutchins argues the trial court improperly allowed impeachment with a prior felony conviction, improperly instructed that a willful falsehood by a witness could result in the distrust of other portions of the witness's testimony and improperly directed a verdict of first degree burglary.

Hutchins also claims sentencing error, arguing that section 654 precluded sentencing on the robbery conviction. In addition, he alleges it was improper to impose a full, consecutive sentence on the oral copulation counts and that the oral copulation count could not be enhanced with the weapons use allegation. Finally, Hutchins urges the trial court failed to state reasons for imposition of the upper base term or for choosing the aggravated term for full consecutive sentencing and gave inadequate reasons for imposing consecutive sentences.

### I-III*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

### IV

### DIRECTED VERDICT

In instructing on the elements of first degree burglary, the trial court made the comment: "The allegation is that the entry was made into an inhabited building and a residence. Those words have their normal and everyday meaning. And I think it's clear from the evidence here that this was an inhabited building and a residence. I don't think there's any contention to the contrary in that regard."

Later, when explaining how verdict forms were to be filled out, the court made these comments: "Burglary is an offense which, under our law, is divided into degrees, first degree and second degree. One of your responsibilities, if you find Mr. Hutchins guilty of the crime of burglary, will be to fix the degree. Now, we haven't talked much about that up to this point,

---

*See footnote, *ante,* page 1219.

because under our law a burglary of an inhabited dwelling house, such as this structure here, this apartment where the—Miss [B.] and her mother were living, is a burglary in the first degree as a matter of law. So if you find Mr. Hutchins guilty, and if you find that the burglary was of an inhabited building and a residence, then as a matter of law this is a burglary in the first degree. But we still require you fix the degree. So there is a place in the verdict form here for you to indicate whether the degree is first or second degree.

"There's a place for you to indicate your finding whether the burglary was or was not committed upon an inhabited building and a residence."

■ Appellant argues the trial court unconstitutionally directed a verdict of first degree burglary. Specifically, he contends the court removed from the jury the determination of whether the place burglarized was an "inhabited dwelling" (§ 460) and thus, whether the burglary was of the first or second degree. He urges per se reversal is required.

If there was any issue in this case which was not in dispute, it was the location of the offenses. Appellant never disputed the offenses occurred. Both the People and appellant accepted the location of the offenses as the "inhabited" apartment where the victim, her mother and brother lived. Viewing this record as a whole, the trial court's statement regarding the nature of the location was obviously the result of the absolutely uncontested nature of the issue. In the context of this case where the jury was properly instructed, the court's comment was not a directed verdict. Moreover, the court's comments cannot be construed as being the equivalent of a directed verdict. But even if error, under any standard of review, the error is harmless. There was no evidence the burglary in this case was of the second degree. One can conclude by way of analogy that the instruction given was the functional equivalent of a failure to instruct on second degree burglary. Such instruction is not required without "evidence substantial enough to merit consideration." (*People* v. *Flannel* (1979) 25 Cal.3d 668, 684, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1].) An argument may also be made that the issue as to the degree of the burglary had been conceded by appellant. (Cf. *People* v. *Reynolds* (1986) 186 Cal.App.3d 988, 996-997 [233 Cal.Rptr. 596].) It may also be urged that pursuant to the recent decision in *People* v. *Jarrell* (1987) 196 Cal.App.3d 604 [242 Cal.Rptr. 219], taking the issue of the degree of the offense from the jury does not require reversal because it does not involve an element of the underlying crime of burglary.

On the facts presented here, we are content to conclude that any error was indeed harmless.

V-VII*

. . . . . . . . . . . . . . . . . . .

Judgment of conviction affirmed; case remanded for resentencing.

Wiener, Acting P. J., and Work, J., concurred.

**BENKE, J.,** Concurring.—In the majority opinion we conclude the trial court did not direct a verdict but rather made improper comments to the jury concerning the degree of the offense. The majority further concludes the error harmless. While I agree, I believe it is necessary to identify the mechanism by which I have reached these conclusions since in my opinion the law in this area is unclear.

I begin with the proposition that, no matter how conclusive the evidence, it is federal constitutional error for a trial court to direct a verdict of guilt (*Rose* v. *Clark* (1986) 478 U.S. 570 [92 L.Ed.2d 460, 106 S.Ct. 3101]) or to comment on or offer an opinion concerning the ultimate issue of guilt or innocence (*People* v. *Rodriguez* (1986) 42 Cal.3d 730, 765 [230 Cal.Rptr. 667, 726 P.2d 113]; *People* v. *Figueroa* (1986) 41 Cal.3d 714, 724-741 [224 Cal.Rptr. 719, 715 P.2d 680]; *People* v. *Lawson* (1987) 189 Cal.App.3d 741-748 [234 Cal.Rptr. 557]). While both types of situations constitute error however, they do not both result in per se reversal.

When a verdict of guilt is directed, the error is automatically reversible. (*Rose* v. *Clark, supra,* 478 U.S. at p. 578 [92 L.Ed.2d at p. 471].) When the error consists of commenting on the issue of guilt or innocence, it may be harmless if beyond a reasonable doubt the comments could not have affected the verdict. (*Henderson* v. *U.S.* (D.C.App. 1987) 527 A.2d 1262; see also *People* v. *Figueroa, supra,* 41 Cal.3d at p. 734, fn. 24; *People* v. *Lawson, supra,* 189 Cal.App.3d at pp. 751-754; cf., *Connecticut* v. *Johnson* (1983) 460 U.S. 73, 78, 84-86 [74 L.Ed.2d 823, 828-829, 832-834, 103 S.Ct. 969].)[1]

---

* See footnote, *ante,* page 1219.

[1] In *Connecticut* v. *Johnson, supra,* 460 U.S. 73, 78, 84-86 [74 L.Ed.2d 823, 828-829, 832-834], four justices of the United States Supreme Court expressed the view that the instruction "every person is conclusively presumed to intend the natural and necessary consequences of his act" was the "functional equivalent of a directed verdict" on the issue of intent and automatically requires reversal. Four dissenting justices expressed the view that automatic reversal was not required and the *Chapman* (*Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065]) standard of review should have been applied. (*Connecticut* v. *Johnson, supra,* at pp. 90-102 [74 L.Ed.2d at pp. 836-844].) The Chief Justice joined in the dissent but wrote a separate opinion to emphasize that the court was not adopting a rule requiring automatic reversal for such error. (*Id.* at p. 90 [74 L.Ed.2d at p. 836].)

A helpful case in dealing with the problem of directed verdicts and improper comments concerning guilt or innocence is *Henderson v. U.S., supra,* 527 A.2d 1262. In *Henderson,* the defendant was charged with the malicious destruction of property. Among the elements of the offense were those requiring that the subject property have value and that it was destroyed maliciously. In instructing the jury the court stated " 'there is no evidence to show that the window was broken without malice.' " (*Id.* at p. 1266.) The court further instructed the jury " 'the only genuine dispute in the case is the one of identity.' " (*Ibid.*) The court, however, also made clear to the jury they were the sole judges of the facts.

The defendant in *Henderson* argued his case was identical to *Minor v. United States* (D.C.App. 1984) 475 A.2d 414, a case earlier decided by the District of Columbia Circuit. In *Minor* the defendant was charged with receiving stolen property valued at more than $100. The judge in *Minor* instructed the jury that " 'as a matter of law, I find that the value is in excess of $100.00.' " (*Id.* at p. 415.) The circuit court reversed holding that the court's instruction was a partial directed verdict on the element of the value of the property. (*Id.* at p. 416.)

The court in *Henderson* refused to apply the holding of *Minor,* noting that while in *Henderson* the trial court had clearly commented on the issue of guilt, it had left ultimate determination of the elements of the offense to the jury; the jury was instructed on the elements of the offense and its determination of the facts was not foreclosed. (Cf. *People v. Lawson, supra,* 189 Cal.App.3d at pp. 752-754.)

The *Henderson* court, however, noted this conclusion did not end its inquiry. While a partial verdict had not been directed, the trial court, nonetheless, had expressed an opinion that the window had been broken with malice and had created a substantial barrier to the jury's independent resolution of the facts. The court found such an error had constitutional implications and that the situation fell somewhere between a partial directed verdict and the full discretion given to the jury to determine facts. The court stated: "We believe the trial court's comment upon the evidence here, while not formally withdrawing the issue of malice, did not 'clearly' leave that issue to the jury. The court's comment was sufficiently authoritative that, if it did not partially direct a verdict as a legal matter, it at least, as a practical matter, shifted the burden of persuasion on an element of the crime from the government to appellant. This violated due process." (527 A.2d at p. 1265.)

The court noted the error was analogous to the burden-shifting error condemned in *Sandstrom v. Montana* (1979) 442 U.S. 510 [61 L.Ed.2d 39,

99 S.Ct. 2450].[2] Since the error was analogous to that in *Sandstrom,* the standard of harmless error was that defined for such error in *Rose* v. *Clark.* The test, therefore, was the beyond a reasonable doubt test defined in *Chapman* v. *California, supra,* 386 U.S. 18, 22-24 [17 L.Ed.2d 705, 709-711].[3]

The court then applied *Rose* and *Chapman* to the legal and factual situation facing it, noting that while the failure of the defense to contest a fact was not dispositive, it was a relevant consideration. The court further noted defense counsel during argument had conceded the window had been broken by someone but argued the "someone" was not the defendant. The court concluded it would have been irrational for the jury to conclude the window was not maliciously broken and the court refused to premise a reversal on the possibility the jury might have acted irrationally.

The reasoning of *Henderson* is compelling. In deciding whether an error is reversible per se, a distinction can rationally be drawn between a court totally removing an element from jury consideration by directing a verdict and a judicial comment that affects the jury's ability to independently determine that element.

The test defined in *Rose* v. *Clark* for determining whether constitutional error is reversible per se is, of course, applicable in California. (*People* v. *Lee* (1987) 43 Cal.3d 666 [238 Cal.Rptr. 406, 738 P.2d 752]; *People* v. *Lopez* (1986) 188 Cal.App.3d 592, 600-603 [233 Cal.Rptr. 207]; *People* v. *Herbst* (1986) 186 Cal.App.3d 793, 803, fn. 8 [233 Cal.Rptr. 123]; *People* v. *Smith* (1987) 188 Cal.App.3d 1495, 1512 [234 Cal.Rptr. 142].) *Rose* and *Lee* make clear that only the most fundamental of errors require per se reversal of a judgment. (*People* v. *Lee, supra,* 43 Cal.3d at pp. 673-676.) While a directed verdict is such an error, the court in *Henderson* points out that improper comment potentially affecting a jury's consideration of an element is not a directed verdict and is not so fundamental an error that per se reversal is justified. Even though such an improper comment may seriously affect the jury's independent evaluation of a case, and indeed if strong enough, will

---

[2] In *Sandstrom,* the Supreme Court held that when intent is an element of a crime, to instruct that the law presumes a person intends the ordinary consequences of his voluntary acts violates the constitutional requirement that all elements of an offense be proved beyond a reasonable doubt. (*Sandstrom* v. *Montana, supra,* 442 U.S. 510, 512 [61 L.Ed.2d 39, 43].)

[3] The court in *Henderson* noted that in two cases with similar factual situations, the reviewing courts had found only two legal possibilities in dealing with the problem. The first was that comments similar to those made in *Henderson* was a partially directed verdict and the second that the comments were not improper at all. (See *State* v. *Theriault* (1980) 182 Conn. 366 [438 A.2d 432, 437]; *United States* v. *Natale* (2d Cir. 1975) 526 F.2d 1160, 1167.) The court in *Henderson* believed a middle ground existed between these extremes where error had occurred but where the error might be harmless.

require reversal under *Chapman,* it does not totally remove the issue from the jury where the jury has been properly instructed on its role and on the law necessary to decide the issue in question.

This conclusion is not foreclosed or inconsistent with existing California authorities.

In *People* v. *Figueroa, supra,* 41 Cal.3d 714, the defendant was charged with the sale of unqualified securities. (Corp. Code, §§ 25110, 25540.) There, evidence was presented by the defense on the question of whether securities were involved and an instruction was proffered which purported to guide the jury in determining the question. The trial court refused the instruction and instead told the jury that the notes involved in the case were securities as defined in section 25019 of the Corporations Code. The Corporations Code section 25019 definition of securities was not read to the jury. The district attorney relied on the court instructions and told the jury that the issue of whether securities were involved had been taken from them. The Supreme Court described the issue before it as whether the giving of the challenged instruction was "tantamount" to a directed verdict on the "security" element of the offense.

The court in *Figueroa* drew no distinction between an actual partial directed verdict, i.e., one in which the element in question is totally removed from jury consideration and comments or instructions that are "tantamount" to a partial directed verdict but which do not totally remove that element from the jury. The court, of course, had no need to make such a distinction since it was operating under the assumption, later shown incorrect by *Rose* and *Lee,* that *any* error deemed "tantamount" to a directed verdict is per se reversible. (*People* v. *Figueroa, supra,* 41 Cal.3d at pp. 724-733, see also fn. 24.) In light of *Rose* and *Lee, Figueroa* is authority for the proposition trial court comments which are "tantamount" to partial directed verdicts are errors of federal constitutional dimension, however, it is not authority for the proposition that such comments always require per se reversal.

Neither is this analysis in conflict with that in *People* v. *Lawson, supra,* 189 Cal.App.3d at pages 746-754. In *Lawson,* the defendant was charged with crimes involving the sale of securities. During trial the parties submitted requests for jury instructions, including special instruction that raised the question of whether the court or the jury would decide if the purchase of accounts receivable in that case were "securities." The defense indicated if the "securities" issue was not a jury question, jury trial would be waived and the case submitted to the court. The trial court ruled as a matter of law

the accounts receivable were securities. Jury trial was waived and the defendant was found guilty. (*Id.* at pp. 744-746.)

Citing *Figueroa,* the court in *Lawson* concluded it was federal constitutional error for the trial court to relegate to itself the determination of an element of the charged offense. The court concluded that, unlike situations where erroneous instructions improperly shifted the burden of proof, the error in its case "totally" removed from the jury an element of the offense. The error was thus per se reversible. (189 Cal.App.3d at pp. 746-754.)

The circumstances of *Lawson* are distinquishable from those in *Henderson* and those in the present case. In *Lawson,* the court "totally" removed an element from the jury's consideration. In the present case, as in *Henderson,* all elements of the offense were presented to the jury for its determination.[4] The error was that the court by its comments affected the power of the jury to independently resolve all elements of the offense. Such error is not the type defined by *Rose* as requiring per se reversal.

The proposition that comment by the court, however strong, which does not totally remove an element from the factfinder, is not a directed verdict, finds support in a recent decision of the United States Supreme Court, *Pope* v. *Illinois* (1987) 481 U.S. 497 [95 L.Ed.2d 439, 107 S.Ct. 1918]. In *Pope,* the defendant was prosecuted for the sale of allegedly obscene materials. The trial court there incorrectly instructed the jury that "community standards" apply in deciding whether a "work, taken as a whole," lacks "serious literary, artistic, political, or scientific value." (*Id.* at p. 500, fn. 3 [95 L.Ed.2d at p. 445, 1075 S.Ct. at p. 1921].) It failed to instruct on the proper "reasonable man standard." Although concluding the trial court had erred in failing to instruct on the proper standard, the court, citing *Rose* v. *Clark,* held the error was not per se reversible because the issue of value had not been totally removed from the jury. By way of footnote, the court explained: "The problem with the instructions in both [this case and *Rose* v. *Clark*] is that the jury could have been impermissibly aided or constrained in finding the relevant element of the crime: in *Rose,* by the erroneous presumption; in this case, by possible reliance on unreasonable community views on the value question. By leaving open the possibility that petitioners' conviction can be preserved despite the instructional error, we do no more than we did in *Rose.* To the extent that cases prior to *Rose* may indicate that a conviction can never stand if the instructions provided the jury do not require it to find each element of the crime under the proper standard of proof, see, e.g., *Cabana* v. *Bullock,* 474 U.S. 376, 384 [88 L.Ed.2d 704, 106 S.Ct. 689] . . . ,

---

[4]The jury was instructed that it was its exclusive duty to determine the facts based on the evidence. The jury was also instructed concerning the elements of all the offenses including the offense of first degree burglary.

after *Rose,* they are no longer good authority." (*Id.* at pp. 503-504, fn. 7 [95 L.Ed.2d at p. 447, 107 S.Ct. at p. 1922].)

Recently the First District, Division Four, in *People* v. *Jarrell* (1987) 196 Cal.App.3d 604 [242 Cal.Rptr. 219], dealt with the same type of situation we now have before us. There, the trial court instructed the jury that if it found the defendant guilty of the crime of burglary, it is burglary of first degree as a matter of law. The court in *Jarrell* concluded while it was error to so instruct, the error was harmless under *Chapman.* Although the trial court clearly removed the decision as to the degree of the offense from the jury, the court held per se reversal not appropriate since the issue removed affected only the degree and not the element of the underlying offenses.

While *Jarrell* greatly simplifies the problem confronting us, its analysis leads us into an unnecessary thicket.

In a series of cases, the United States Supreme Court has defined, albeit not always clearly, the factors to be proved by the state beyond a reasonable doubt and those factors which may be relegated to proof by the defense or which may be determined by using a standard less than that of beyond a reasonable doubt. (See *McMillan* v. *Pennsylvania* (1986) 477 U.S. 79 [91 L.Ed.2d 67, 106 S.Ct. 2411]; *Mullaney* v. *Wilbur* (1975) 421 U.S. 684, 696-701 [44 L.Ed.2d 508, 517-521, 95 S.Ct. 1881]; *Patterson* v. *New York* (1977) 432 U.S. 197, 201-216 [53 L.Ed.2d 281, 286-295, 97 S.Ct. 2319]; see also *People* v. *Garcia* (1984) 36 Cal.3d 539, 552-557 [205 Cal.Rptr. 265, 684 P.2d 826].) Viewed together, these cases support the proposition a state Legislature may in its wisdom determine by statute what it is a jury must decide beyond a reasonable doubt with respect to any given offense. However, where a finding required to be made by a jury serves to increase punishment, it is a violation of federal due process to totally remove that issue from the province of the jury. Such a violation is precisely the type of directed verdict condemned as per se reversible in *Rose* v. *Clark.*

Viewing these authorities within the context of the issue before us, we see that in California the factfinder must determine beyond a reasonable doubt whether the degree of the burglary was first or second. (Pen. Code, §§ 1097, 1157.) A finding of first degree burglary significantly increases a defendant's sentence. I do not believe, absent an express concession by a defendant, that a court may remove from the jury its legislatively created obligation to make a finding as to the degree of the offense.

Unlike the analysis offered by the court in *Jerrell,* I would focus the analysis of the issue not on whether the matter removed from the jury goes to a sentencing function but whether the instruction or statement made by

the trial court has actually removed a legislatively required finding from the trial process. As indicated previously, here the issue of degree of the offense was not totally removed and thus there was no directed verdict in this case.

The question thus becomes whether the error was prejudicial. As is noted in the majority opinion, if there was any issue in this case which was not in dispute, it was whether the location of the burglary was an inhabited building.

On this basis I would affirm the judgment as to the burglary.