[Crim. No. 3363. Second Appellate District, Division One.—December 10, 1940.]

THE PEOPLE, Respondent, v. DON DUTTON, Appellant.

Robert E. O'Neill and Stanley Visel for Appellant.

Earl Warren, Attorney-General, and Eugene M. Elson, Deputy Attorney-General, for Respondent.

WHITE, J.—In two informations filed by the district attorney of Los Angeles County defendant was charged with the crimes of violation of the Corporate Securities Act (Stats. 1917, p. 673, and amendments thereto; Deering's Gen. Laws, Act 3814) and grand theft. By the information in case No. 79037 (hereinafter referred to as the first information) he was charged in counts I, VII, VIII, IX, X, XII and XIV with violation of the Corporate Securities Act, and in counts II, III, IV, V, VI, XI and XIII with grand theft. The second information (No. 79336) contained three counts of violation of the Corporate Securities Act. Defendant entered a

plea of not guilty to each count and admitted, as charged, that he had suffered a previous conviction of a felony.

The jury returned verdicts finding defendant guilty upon counts I, VIII, IX, X, XII and XIV of the first information and I, II and III of the second information, all charging violation of the Corporate Securities Act, and upon counts IV, V, VI and XIII of the first information, charging grand theft. Upon the remaining counts defendant was acquitted. Defendant's motion for a new trial was granted as to all the counts charging grand theft and such charges subsequently dismissed. His appeal herein is prosecuted from the judgment of conviction entered upon the verdicts finding him guilty upon nine counts of violation of the Corporate Securities Act, in each of which counts it was alleged that he sold and issued, and caused to be sold and issued, a "security" without first having applied for and obtained from the Commissioner of Corporations of the State of California a permit so to do.

From the evidence adduced by the prosecution, it appears that in September, 1938, appellant and one L. S. Kirby obtained a lease upon some mining property in Shasta County. The lease was taken in the name of Kirby as lessee, and it was agreed orally that Kirby was to operate the property and appellant was to equip it. In April, 1939, this lease was declared forfeited and canceled, and a new lease was executed, running to one Gleason as lessee, who apparently was acting on behalf of appellant. In November, 1938, appellant obtained from James R. Wilkinson the sum of $1,000 and delivered to Wilkinson an instrument entitled "Assignment of Royalty Interest", purporting to convey a 2 per cent royalty interest in the leased property, and as additional security delivered to Wilkinson a deed of trust executed by Kathryn J. Wilson upon her home property. This transaction forms the basis of count I of the first information. Mrs. Wilson testified that in consideration of her executing this deed of trust, as well as another deed of trust to a Miss Amber Slipp, she was promised by appellant a 2 per cent or 3 per cent interest in the mine. Subsequently, in June, 1939, appellant delivered to Mrs. Wilson an assignment executed by Gleason of the lease that had been taken in Gleason's name as lessee. The following month, at Mrs. Wilson's request, the property was taken "out of her name" through the

execution by her of an instrument presented by appellant which assigned the lease to one Harrington, reserving to Mrs. Wilson a "16% net royalty" after a "15% landowner's royalty" had been paid. These transactions with Mrs. Wilson form the basis of counts VIII and IX of the first information.

The charges in counts X and XII of the first information were founded upon the issuance by appellant in June, 1939, to a Miss Amber Slipp of a purported "limited partnership agreement" providing for the payment to her of 10 per cent of the profits from the operation of the property, and the subsequent issuance of another such agreement, said to supersede the prior agreement, granting to the same party a 15 per cent interest. Miss Slipp also received a $2,000 deed of trust executed by Mrs. Wilson, for which the latter was orally promised an additional 3 per cent interest (count IX of the first information). Under count XIV of the first information it was shown that on July 11, 1939, one Bernice Meeks gave appellant $200 and received therefor a "limited partnership agreement" providing that she should receive 1 per cent of the proceeds of the operation of the property.

In December, 1939, a Mrs. Steenson paid to appellant the sum of $1,000 and received in return an assignment by Mrs. Wilson of the sum of $1,030 from Mrs. Wilson's share of the estate of Arthur Gallagher, deceased, and a 1 per cent "limited partnership agreement". For their services in finding Mrs. Steenson for him, appellant gave to a Miss Cristion a "limited partnership agreement" for ½ per cent and to a Miss Wriswall and a Harry Grove a similar instrument granting them a 1 per cent interest to be shared equally. The three counts of the second information are based upon the issuance of these three percentage agreements.

It was stipulated that at no time had appellant obtained a permit from the Commissioner of Corporations with reference to any of the instruments in question. The facts hereinabove set forth were not denied by appellant at the trial, and his defense was confined to a showing that the money he received was not obtained with intent to defraud, and was in fact expended upon the mining property. Appellant does not contend that the evidence is insufficient to support the verdicts, but relies for reversal upon alleged prejudicial error occurring at the trial.

■ Appellant's first assignment of error is predicated upon alleged prejudicial misconduct on the part of the district attorney during the examination of the prosecution witness Louis S. Kirby. After testifying that for seven years he had been a guard at the state prison road camp, he was asked:

"Q. Do you know the defendant, Don Dutton?

"A. I do.

"Q. How long have you known him?

"A. I am not positive of the year, but I think it was about 1932 when I met him, or 1933.

"Q. Where did you meet him?

"A. At the prison camp in Monterey.

"Mr. HIGGINS (Defendant's counsel): If your Honor please, may we approach the bench at this time?

"The COURT: Yes, you may.

"(Following proceedings at the bench.)

"Mr. HIGGINS: At this time, I make a motion for a mistrial. It is quite apparent what the purpose of this testimony is.

"Mr. ARTERBERRY (Deputy District Attorney): It is a part of the *res gestae.*

"The COURT: I do not think there is anything thus far that would indicate anything that is prejudicial. The motion is denied. However, I would not go into that any further.

"(End of proceedings at the bench.) . . . "

We find nothing in the foregoing which indicates that the witness testified to the effect that appellant had been convicted of a felony. For aught that appears, appellant might have been employed, as was the witness, in the capacity of a guard or in some other civilian capacity at the prison camp. But even though it be assumed that the questions were improper, still it cannot be said that the same were prejudicial, because when appellant voluntarily took the witness-stand in his own defense the very first interrogatory put to the defendant by his own counsel, was, "Mr. Dutton, have you ever been convicted of a felony?" to which appellant answered, "I have." Thus we see that the only positive evidence of appellant's previous felony conviction was supplied by himself. Such being the case, he cannot now be heard to complain of any prejudice occurring therefrom.

Further, in view of appellant's decision voluntarily to become a witness, the prosecution would have been justified in eliciting from him on cross-examination, by way of impeachment, that he had suffered such prior felony conviction. (*People* v. *Rogers,* 112 Cal. App. 615, 620 [297 Pac. 924]; *People* v. *Silva,* 2 Cal. App. (2d) 616 [38 Pac. (2d) 481].)

 Appellant next urges that prejudicial error resulted from the admission of testimony by Albert Hunt and Robert H. Harrington concerning facts unconnected with the offenses for which he was on trial. The witness Hunt testified that he gave approximately $1100 to appellant in 1938, and as security therefor received a bond of "Sierra County Power Company" for $1,000. The witness identified People's Exhibit 25 as being a bond similar to the one he received from appellant. He further testified that he lived and worked on the leased property for six or seven months after September, 1938, and during this time received $500 or $600 from appellant, some of which the witness spent for supplies and equipment. Robert H. Harrington testified that in 1928 he went to work at a mine in Sierra City, California, being told by Mr. Dutton that he, the witness, had been made secretary of Sierra County Power Company, of which he understood Dutton was president; that he signed People's Exhibit 25, as secretary, at the request of Mr. Dutton, whose purported signature appeared thereon as president; that he worked at the mine for a month and then returned to Los Angeles; that his job as secretary "went with the wind", and that he never heard of the Sierra County Power Company again. The witness further stated that he had occasionally grubstaked Mr. Dutton and had been told at some time or other he would be reimbursed with "a certain per cent"; but that he had never seen or been informed of the assignment to him by Mrs. Wilson referred to in count IX of the first information.

We are unable to perceive wherein this evidence was prejudicial or even remotely referred to the commission of other offenses by appellant. It is here contended that the evidence concerning the Sierra County Power Company bond tended to show that such company was not substantial; permitted the inference that it was fraudulently engaged in issuing bonds, and that by the conduct and actions of appellant both witnesses were misled to their detriment; that appellant had

issued securities other than those involved in the charges against him. However, it is to be noted that nowhere in the challenged testimony was it made to appear that in issuing the bonds appellant did so without an appropriate permit so to do. ■ But we think the evidence, even if it be conceded that it referred to other offenses, was nevertheless admissible to show the intent, motive, system or scheme by and through which appellant operated his enterprise to evade the Corporate Securities Act. (*People* v. *Murphy,* 17 Cal. App. (2d) 575, 588 [62 Pac. (2d) 592]; *People* v. *Thorne,* 10 Cal. (2d) 705 [76 Pac. (2d) 491].) In cases of this kind one of the essential facts admissible is the defendant's plan or design to do the act with which he is charged. Such a plan may be evidenced by his conduct, and such conduct may consist of other similar acts.

■ Finally, it is contended that the trial court erred prejudicially to appellant when it gave to the jury an instruction reading as follows:

"You are instructed that People's Exhibits ——" (*sic*) "are securities as defined in the Corporate Securities Act, and if you find from the evidence beyond a reasonable doubt that the acts of execution, sale, and delivery, or either or any of them, were the acts of this defendant, and if you further find that, at the time of the execution, sale or delivery of said instruments, the defendant had not applied for or received a permit from the commissioner of corporations authorizing and permitting the execution, sale and delivery of such instrument, then you will find the defendant guilty as charged in the indictment."

Appellant asserts that by informing the jury that as a matter of law the people's exhibits constituted securities, the court decided a question of fact and withdrew it from the consideration of the jury, and in so doing went far beyond its prerogatives under section 19, article VI of the Constitution. That by such instruction the court did withdraw from the jury the question as to whether certain documents introduced into evidence were securities, there can be no doubt. But in advising the jury that the documents in question as a matter of law were securities within the meaning of the act, the court committed no error. Section 19 of article VI of the Constitution of California provides that "The court may instruct the jury regarding the law applicable to the facts of the

case. . . . '' Pursuant to the foregoing provision, the trial court was therefore authorized to determine as a matter of law and to instruct the jury regarding the legal effect of the terms of the challenged documents. In view of the definition of the term "security" as set forth in section 2 of the Corporate Securities Act, there can be no doubt that as a matter of law the people's exhibits in question constituted securities and the court was authorized to so advise the jury. The court clearly and properly instructed the jury that before they could find the defendant guilty they must find that he did certain acts with relation to these securities, and those acts were set forth in the instruction above quoted. The jury was therefore permitted to determine whether or not, in disposing of the securities, the defendant did so in violation of the Corporate Securities Act. Whether or not the documents in question constituted securities was not a question of fact, but one of law, upon which the court alone could pass. (*People* v. *McCalla,* 63 Cal. App. 783 [220 Pac. 436] ; *People* v. *Rubens,* 11 Cal. App. (2d) 576, 587 [54 Pac. (2d) 98, 1107].)

Appellant complains that the court also instructed the jury that all of the people's exhibits were securities. We fail to see how any prejudice could result to appellant from this inadvertence, because under the instructions, before the jury could find the defendant guilty they were required to determine that he issued, sold and delivered a particular security to a particular person on or about a certain date, and that at such time he did not have a permit from the Commissioner of Corporations authorizing such execution, sale or delivery. There was but one document upon which each count was predicated, and but a single document introduced to establish the facts charged in each count. Manifestly, no prejudice could ensue to appellant from the instructions that all of the people's exhibits were securities, nor was the jury misled or confused thereby, when, as herein indicated, they were positively instructed that before they could convict the defendant they must be satisfied beyond a reasonable doubt that he acted in contravention of the Corporate Securities Act with reference to the specific document relied upon in each separate and specific count of the informations.

Viewing this case in its entirety, including the stipulation entered into by appellant that he did not have a per-

mit from the Commissioner of Corporations to execute or deliver the documents mentioned in the various counts of the informations, we would not be warranted in disturbing the judgments because of the provisions of section 4½ of article VI of our state Constitution.

The attempted appeal from the sentence is dismissed; and for the reasons herein stated, the judgment is affirmed.

York, P. J., and Doran, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 3, 1941.