[No. F005383. Fifth Dist. Feb. 18, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
RANDY D. LAWSON, Defendant and Appellant.

742

**COUNSEL**

Arthur R. Collins, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, James T. NcNally, Michael J. Weinberger and Esteban Hernandez, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

WOOLPERT, Acting P. J.—Defendant became involved in the sale of accounts receivable. In doing so, he allegedly violated several provisions of the Corporations Code.[1] He appeals the judgment following his multiple count conviction for violation of sections 25110/25540 (sale of unqualified securities), and sections 25401/25540 (making untrue statements in the sale of securities).[2] The issues on appeal have a broad application in criminal law:

(1) When, if at all, may the trial court instruct the jury that an element of the crime charged is established as a matter of law?

(2) Assuming the court errs in so doing, what standard of prejudice applies on review?

After the trial in this matter, our high court resolved the first question in a similar case. We will apply the rule of *People* v. *Figueroa* (1986) 41 Cal.3d 714 [224 Cal.Rptr. 719, 715 P.2d 680], i.e., instructing as a matter of law that an element of the crime has been established constitutes an impermissible partial directed verdict. Although the court in *Figueroa* did not decide the applicable standard of prejudice for such error, we will find reversal is required without regard to prejudice in this case. However, we emphasize per se reversal may not be required under different circumstances.

## The Facts

Briefly, the facts in this case are as follows: In September 1981, defendant started a factoring business known as "Freedom Funding." Freedom Funding purchased and sold at a discounted rate 30-day accounts receivable.

---

[1] All statutory references are to the Corporations Code unless otherwise indicated.

[2] Section 25110 provides: "It is unlawful for any person to offer or sell in this state any security in an issuer transaction (other than in a transaction subject to Section 25120), whether or not by or through underwriters, unless such sale has been qualified under Section 25111, 25112 or 25113 (and no order under Section 25140 or subdivision (a) of Section 25143 is in effect with respect to such qualification) or unless such security or transaction is exempted under Chapter 1 (commencing with Section 25100) of this part."

Section 25540 provides: "Any person who willfully violates any provision of this law, or who willfully violates any rule or order under this law, shall upon conviction be fined not more than ten thousand dollars ($10,000) or imprisoned in the state prison, or in a county jail for not more than one year, or be punished by both such fine and imprisonment; but no person may be imprisoned for the violation of any rule or order if he proves that he had no knowledge of the rule or order."

Section 25401 provides: "It is unlawful for any person to offer or sell a security in this state or buy or offer to buy a security in this state by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."

In December 1981, defendant acquired Comfy Ray Company, a business desperately short of cash with large accounts receivable and payable. The receivables, as well as the business's warehouse inventory, were already assigned to the Bank of America as security for a $190,000 loan made by the bank to Comfy Ray. Aware of these facts, defendant nevertheless acquired the business in consideration for his agreement to hold the owner of Comfy Ray harmless on all the company's debts. An officer for Bank of America also informed defendant, in late January 1982, of the bank's secured interest in the majority of Comfy Ray's accounts receivable and other assets.

In approximately March 1982, defendant directed the development and approved the printing of a brochure to promote and market Freedom Funding. The brochure was inaccurate in several respects; it included misstatements regarding biographical information on defendant, the element of risk in the receivables, and Freedom Funding's offer to repurchase receivables. Those who purchased accounts receivable through Freedom Funding relied on such misrepresentations in making or continuing to make their purchases.

Agents for Freedom Funding sold Comfy Ray's accounts receivable to these "investors" without disclosing the Bank of America's security interest in same.

## I. Introduction.

During the January 1985 jury trial in this matter, both sides submitted requests for jury instructions, including special instructions which raised the following issues: (1) who, the judge or jury, should determine whether the purchases of accounts receivables were "securities"; and (2) whether, in the crime of sale of unqualified securities, the intent with which the crime was committed was material. On the fourth day of trial, outside the presence of the jury, defendant asked the court how it would instruct on these legal issues. As defense counsel explained: "If the Court in effect rules that the Defendant's actual state of mind is not an issue, and, therefore, would not be a question put to the jury, and if the Court rules that the question whether or not these are securities is not a jury question, we would propose, subject to the balance of the stipulation, to submit to the Court and to the Court alone the [guilt] or innocence of the Defendant on the corporate securities charges."

The court ruled as a matter of law the accounts receivable were securities. Presumably the judge based his ruling on cases which appeared to establish the court exclusively could determine whether something constituted a security because that was a question of law, not fact. (*People* v. *Dutton* (1940)

41 Cal.App.2d 866, 873 [107 P.2d 937].) In light of the trial court's rulings, defendant waived his right to jury trial on the charges of sale of unqualified securities and other charges of making an untrue statement in the sale of a security.

The court found defendant guilty of five counts of selling unqualified securities and five counts of making an untrue statement in the sale of securities. On the People's motion, the court dismissed the remaining counts and enhancements.

Each count of which the defendant was convicted included, as an element, the existence of the security. As noted above, the trial court, rather than a jury, decided the issue of whether the documents constituted securities. According to defendant, that was a task for the jury alone.

## II. FIGUEROA.

In *People* v. *Figueroa, supra,* 41 Cal.3d at pages 723-735, the state Supreme Court held, in a prosecution for sale of unqualified securities, the trial court's instruction that certain promissory notes were securities under the corporate securities law was tantamount to a directed verdict on the security element of the offense. In reaching its conclusion the high court dispelled notions that the trial court could so instruct (1) if the evidence left little room for doubt and/or (2) because the issue was solely a question of law.

The court first reiterated the longstanding federal prohibition against directed verdicts no matter how conclusive the evidence. It noted the prohibition emanated from the guarantee of due process and right to a jury trial. It also observed California cases were in general accord with the federal prohibition (e.g., *People* v. *Garcia* (1984) 36 Cal.3d 539 [205 Cal.Rptr. 265, 684 P.2d 826]; *People* v. *Shavers* (1969) 269 Cal.App.2d 886 [75 Cal.Rptr. 334]). Further, the court particularly discussed two cases from the federal circuits which held it was error to instruct the jury that a certain instrument was a security within the meaning of the Federal Securities Law. (*United States* v. *Johnson* (5th Cir. 1983) 718 F.2d 1317; *Roe* v. *United States* (5th Cir. 1961) 287 F.2d 435.) *Figueroa* noted, however, federal authorities were conflicting in this regard. (*People* v. *Figueroa, supra,* 41 Cal.3d at pp. 724-729.)

Responding to arguments by the Attorney General that the instruction was justified, the *Figueroa* court reasoned if a judge were permitted to instruct the jury that an element had been established due to supposedly undisputed evidence, the right to a jury trial would become a hollow guarantee. (*People* v. *Figueroa, supra,* 41 Cal.3d at p. 730.) The court also explained that

although the definition of a security is a matter of law, whether a particular item satisfies the definition is a question of fact. (*People* v. *Figueroa, supra,* 41 Cal.3d at pp. 730-734.) In this way, the *Figueroa* court expressly disapproved those California appellate decisions which held a trial court could instruct a particular instrument was a security.

The court emphasized prior justifications for holdings in California failed when viewed "under more modern concepts of due process and the right to a jury trial." (*Id.* at p. 731.) In a particularly conclusive paragraph the court apparently foreclosed further debate: "In many criminal cases, the prosecution's evidence will establish an element of the charged offense 'as a matter of law.' Similarly, in many instances, the accused will not seriously dispute a particular element of the offense. [Citation.] However, neither of these sometime realities of trial practice justifies the giving of an instruction which takes an element from the jury and decides it adversely to the accused. Such an instruction confuses the roles of judge and jury." (*People* v. *Figueroa, supra,* 41 Cal.3d at p. 733, fn. omitted.)

A concurring opinion summarized the *Figueroa* holding: "[T]he majority distills an absolute rule that apparently would prohibit in criminal trials, regardless of the state of the evidence, such instructions as one that a particular automobile is a motor vehicle or one that a particular gun is a firearm." (*Id.* at p. 742.)

The concurring justices preferred to postpone "such judicial rule-making until the need arises." (*Ibid.*) The response of the majority is found in its footnote 24 which criticized the concurring opinion as recasting the old "law/fact" distinction which would lead to a case-by-case review the majority intended to reject. (*Id.* at p. 734.)

▇ From *Figueroa* we gather these practical rules: (1) No matter how conclusive the evidence, the court may not directly inform the jury an element of the crime charged has been established. (See *Konda* v. *United States* (7th Cir. 1908) 166 Fed. 91.)

(2) The trial court determines what law applies to the charges to be deliberated by the jury, and to the extent possible, should state the law in "abstract legal principles." (*People* v. *Figueroa, supra,* 41 Cal. 3d at p. 741.)

(3) Absent a stipulation by defendant that an element of the crime has been established, or is admitted, the trial court must " 'go through the motions at least of submitting the issue to the jury even though the question appears ... to be palpably lacking in factual character.' " (*Id.* at p. 727, fn. 15, citing *United States* v. *Austin* (10th Cir. 1972) 462 F.2d 724, 737.)

(4) Even such a simple concept as "a gun is a firearm," must be conveyed to the jury in definitional terms so as to permit the jury to apply the instruction in its factfinding/law-applying function.

It may seem strange that the court has the duty to make major factual determinations in screening charges, lesser included offenses and defenses which the evidence supports giving the jury (see *People* v. *Edwards* (1985) 39 Cal.3d 107, 116 [216 Cal.Rptr. 397, 702 P.2d 555]; *People* v. *Ramkeesoon* (1985) 39 Cal.3d 346, 351 [216 Cal.Rptr. 455, 702 P.2d 613]), yet cannot be direct in informing the jurors that even the simplest element of the crime has been proved. Likewise, it may appear hypertechnical to allow a general instruction, for example, which describes a firearm, and still find reversible error if the court simply directs the jury that the gun used satisfied the firearm element of the crime charged.

If there is an adequate explanation for these superficially conflicting rules, it evolves from the idea that before a case goes to the jury the court must screen it to eliminate charges which are unsupported by evidence (Pen. Code, § 1118.1), and fully instruct on the law applicable to the offenses which remain to be considered (Pen. Code, § 1127; *People* v. *Wickersham* (1982) 32 Cal.3d 307, 323-326 [185 Cal.Rptr. 436, 650 P.2d 311]), without suggestion from the court that any of the elements of the offenses have been established.

Out of necessity, the appellate court presumes the jurors faithfully followed the trial court's directions, including erroneous ones. Therefore, it must be accepted the jurors failed to deliberate on any element taken from the jury by the court's misdirection. (*Sparf and Hansen* v. *United States* (1895) 156 U.S. 51 [39 L.Ed.2d 343, 15 S.Ct. 273].)

Noting the California Supreme Court decided *Figueroa* after the trial in the present case, the Attorney General argues this court should not apply *Figueroa* retroactively. He relies on the following assumptions: (1) the *Figueroa* court clearly established a new rule of law; (2) its primary purpose was to avoid prospective jury trial errors; (3) alternatively, the parties relied upon the former case law; and (4) the criminal justice system would be unnecessarily burdened if *Figueroa* were retroactively applied. We disagree.

An in-depth discussion of the test for retroactivity appears in *People* v. *Guerra* (1984) 37 Cal.3d 385, 399-406 [208 Cal.Rptr. 162, 690 P.2d 635]. The *Guerra* court emphasized the built-in presumption of retroactivity in our legal system. (*Id.* at pp. 399-401.) It added such a presumption, however, could be rebutted in a limited number of cases where there could have been

justifiable reliance upon a former rule of law and a contrary result was reached.

The first question to be asked is: Does the decision establish a new rule of law? (*People* v. *Guerra, supra,* 37 Cal.3d at p. 399.) Conceivably, the *Figueroa* court only applied existing federal and state precedent, prohibiting directed verdicts, in determining it was error for the trial court to instruct that an essential element of the offense had been established. By this logic, *Figueroa* did not establish a new rule of law.

However, such an analysis ignores the fact that when the *Figueroa* court filed its decision, there were four appellate decisions which held the trial court could instruct the jury a particular instrument was a security within the meaning of the state corporate securities laws. (*People* v. *Figueroa, supra,* 41 Cal.3d at p. 731.) It is therefore difficult to conclude *Figueroa* did not create a new rule of law.

Assuming *Figueroa* established a new rule of law, the question then becomes whether the prior rule to the contrary was one upon which anyone could have justifiably relied. (*People* v. *Guerra, supra,* 37 Cal.3d at p. 399.)

"[S]uch a 'clear break with the past' occurs only in certain limited situations, i.e., when the decision (1) explicitly overrules a precedent of this court (e.g., *People* v. *Disbrow* (1976) 16 Cal.3d 101, 113 & fn. 14 [127 Cal.Rptr. 360, 545 P.2d 272]), or (2) disapproves a practice impliedly sanctioned by prior decisions of this court (e.g., *Donaldson* [v. *Superior Court* (1983) 35 Cal.3d 24, 37 (196 Cal.Rptr. 704, 672 P.2d 110)]), or (3) disapproves a longstanding and widespread practice expressly approved by a near-unanimous body of lower-court authorities (e.g., *People* v. *Bustamante* (1981) 30 Cal.3d 88, 96, 102 [177 Cal.Rptr. 576, 634 P.2d 927])." (*People* v. *Guerra, supra,* 37 Cal.3d at p. 401.)

The first two tests for evaluating a "clear break with the past" are inapplicable here. *Figueroa* neither expressly overruled California Supreme Court precedent nor did it disapprove a practice impliedly sanctioned by previous decisions of the California Supreme Court. Remaining is the question whether *Figueroa* disapproved a longstanding and widespread practice expressly approved by a near unanimous body of lower court case authorities.

The Attorney General argues *Figueroa* acknowledged a lengthy and settled body of case law which held the question of what constitutes a security was a matter of law. The *Figueroa* court, however, made no such acknowledgement. Rather, the court explained: "The Attorney General ... points to a

'lengthy and settled' body of case law which assertedly holds that the question of what constitutes a security is one of law reserved exclusively to the trial court. [Citations.]" (*People* v. *Figueroa, supra,* 41 Cal.3d at p. 731.)

Thus, it was the Attorney General in *Figueroa,* not the Supreme Court, who so characterized the case law.

More importantly, as the *Figueroa* court analyzed those decisions cited by the Attorney General: "[O]nly four cases, *McCalla* [*People* v. *McCalla* (1923) 63 Cal.App. 783, 789 (220 P. 436)], *Dutton* [*People* v. *Dutton* (1940) 41 Cal.App.2d 866, 872-873 (107 P.2d 937)], *Marvin* [*People* v. *Marvin* (1941) 48 Cal.App.2d 180, 193 (119 P.2d 413)] and Skelton [*People* v. *Skelton* (1980) 109 Cal.App.3d 691, 712-713 (167 Cal.Rptr. 636)], squarely hold that the court may instruct the jury that a particular instrument is a security within the meaning of the state corporate securities laws." (*People* v. *Figueroa, supra,* 41 Cal.3d at pp. 731-732, fn. omitted.)

In addition to criticizing the four opinions for their lack of analysis and authority, the *Figueroa* court was surprised by the failure of those courts to address the due process and jury trial rights arguably violated by such an instruction.

"[T]he rule prohibiting directed verdicts was enunciated as early as 1895 by the Supreme Court in *Sparf and Hansen* v. *United States, supra,* 156 U.S. 51. Perhaps the courts in *McCalla, Marvin,* and *Dutton* may be forgiven for failing to address the issue because of the relative age and/or obscurity of that case. However, the *Skelton* court could not rely on this excuse. By 1980, when that case was decided, the rule had been soundly reaffirmed by the high court two times—in *Brotherhood of Carpenters* and *Martin Linen Supply Co.* —and the basis for the rule reaffirmed twice more in *Winship* [(1970) 397 U.S. 358 (25 L.Ed.2d 368, 90 S.Ct. 1068)] and *Sandstrom* [(1979) 442 U.S. 510 (61 L.Ed.2d 39, 99 S.Ct. 2450)]." (*People* v. *Figueroa, supra,* 41 Cal.3d at p. 733, fn. omitted.)

The *Figueroa* court also noted the recent opinion in *People* v. *Feno* (1984) 154 Cal.App.3d 719, 728 [201 Cal.Rptr. 513], in which an appellate court held a trial court erred in assuming certain joint venture interests were securities, " '*rather than instructing the jury to decide whether those interests were securities within the meaning of section 25019. . . .*' " (*People* v. *Figueroa, supra,* 41 Cal.3d at p. 733, fn. 21.)

Thus it does not appear, given *Figueroa's* discussion of the four decisions, that reliance upon them could have been justified. Each opinion lacked authority for the rule. The weight of authority was against such a rule.

Further, at least one recent appellate court expressly reached a contrary conclusion. With regard to that decision, we note the appellate court issued its decision in *Feno* before the trial in the present case. For these reasons then, we will apply *Figueroa* retroactively.

In this case the trial court did not actually give the prohibited instruction. Rather, the court ruled it *would instruct* the jury that the purchase of accounts receivable constituted a security. However, as a result of the court's ruling, defendant waived his right to jury trial.

 Arguing defendant invited error, the Attorney General notes defense counsel requested the court's ruling on proposed instructions in the midst of trial, instead of waiting until all the evidence had been heard. Accordingly, counsel acted for a tactical purpose and invited error. (*People* v. *Wickersham, supra,* 32 Cal.3d 307, 330-335.)

The Attorney General's argument is meritless. To begin, the issue of who would decide what constituted a security did not depend on the amount of evidence received at the time of the court's ruling. Nevertheless, the parties stipulated the court could consider the preliminary hearing testimony in addition to the testimony and documentary evidence produced at trial.

Further, while it appears defense counsel acted with a purpose in stipulating to a court trial, it was not with the purpose of inviting error as the Attorney General suggests. Rather, defendant's stipulation appears to have been motivated by the then very recent state Supreme Court order granting review in *People* v. *Figueroa.*

Thus, although the court's ruling was erroneous, it was not invited by defendant in this case.

### III. STANDARD OF PREJUDICE.

 Citing *Connecticut* v. *Johnson* (1983) 460 U.S. 73 [74 L.Ed.2d 823, 103 S.Ct. 969], and *People* v. *Garcia, supra,* 36 Cal.3d 539, defendant contends the trial court's error requires per se reversal. In both of these decisions, the respective courts addressed the standard of prejudice in evaluating instructional error which denies a defendant the right to have the jury decide each element of a charged offense. Specifically in those two cases, the issue of intent was removed from the jury's consideration.

As our state Supreme Court observed in *Garcia,* the United States Supreme Court in *Connecticut* v. *Johnson* was divided evenly between a

*Chapman* standard[3] and a per se reversal standard with exceptions. Assuming the United States Supreme Court would reach the same conclusion, the majority in *Garcia* adopted a per se reversal rule, with four limited exceptions to be applied when instructional error completely eliminates an essential issue from the consideration of the jury. (*People* v. *Garcia, supra,* 36 Cal.3d at pp. 554-556.)

In *Figueroa,* the court noted: "[I]nstructions like the one given here may not always constitute prejudicial error. While reversal of the judgment for the error discussed in Part II of this opinion renders it unnecessary to decide what standard of prejudice should be used to assess the trial court's instruction, today's opinion should not be read as compelling a reversal in every case in which similar instructions were given. (Cf. *People* v. *Garcia, supra,* 36 Cal.3d at pp. 550-557.)" (*People* v. *Figueroa, supra,* 41 Cal.3d at p. 734, fn. 24.)

Although the Attorney General calls our attention to language in *Figueroa* concerning *Garcia,* he urges this court to adopt the *Chapman* standard.

Since the California Supreme Court rendered its opinion in *Figueroa,* the United States Supreme Court in *Rose* v. *Clark* (1986) 478 U.S. 570 [92 L.Ed.2d 460, 106 S.Ct. 3101] found that an instruction which impermissibly shifted the *burden of proof* on malice in a murder prosecution did not compare with the kinds of errors which automatically require reversal of an otherwise valid conviction. (*Id.* at p. _ [92 L.Ed.2d at p. 471, 106 S.Ct. at p. 3107].) Instead, the *Rose* court concluded the harmless beyond a reasonable doubt standard of *Chapman* should be applied.

"The purpose behind the rule of *Sandstrom v. Montana* supports this conclusion. *Sandstrom* was a logical extension of the Court's holding in *In re Winship* . . . that the prosecution must prove 'every fact necessary to constitute the crime with which [the defendant] is charged' beyond a reasonable doubt. *Id.,* at 364, 90 S.Ct., at 1073; . . . When the verdict of guilty reached in a case in which *Sandstrom* error was committed is correct beyond a reasonable doubt, reversal of the conviction does nothing to promote the interest that the rule serves."[4] (*Rose* v. *Clark, supra,* 478 U.S. at p. [92 L.Ed.2d at p. 472, 106 S.Ct. at p. 3107].)

---

[3]*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065].

[4]In *Sandstrom,* the high court held an instruction creating a presumption of malice which has the effect of shifting the burden of proof on intent to the defendant violates due process under *In re Winship, supra.* (*Sandstrom* v. *Montana, supra,* 442 U.S. at pp. 523-524 [61 L.Ed.2d at pp. 50-51].)

In addition, the *Rose* court explained that *Sandstrom* error is not the equivalent of a directed verdict which would require reversal per se.

"[H]armless-error analysis presumably would not apply if a court directed a verdict for the prosecution in a criminal trial by jury. We have stated that 'a trial judge is prohibited from entering a judgment of conviction or directing the jury to come forward with such a verdict . . . regardless of how overwhelmingly the evidence may point in that direction.' *United States* v. *Martin Linen Supply Co.,* 430 U.S. 564, 572-573, 97 S.Ct. 1349, 1355, 51 L.Ed.2d 642 (1977) citations omitted). Accord, *Carpenters* v. *United States,* 330 U.S. 395, 408, 67 S.Ct. 775, 782, 91 L.Ed. 973 (1947). This rule stems from the Sixth Amendment's clear command to afford jury trials in serious criminal cases. See *Duncan* v. *Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). Where that right is altogether denied, the State cannot contend that the deprivation was harmless because the evidence established the defendant's guilt; the error in such a case is that the wrong entity judged the defendant guilty." (*Rose, supra,* 478 U.S. at p. _ [92 L.Ed.2d at p. 471, 106 S.Ct. at p. 3106].)

However, in the case of *Sandstrom* error: "When a jury is instructed to presume malice from predicate facts, it still must find the existence of those facts beyond a reasonable doubt. [Citation.] In many cases, the predicate facts conclusively establish intent, so that no rational jury could find that the defendant committed the relevant criminal act but did not *intend* to cause injury. [Citation.] In that event the erroneous instruction is simply superfluous: the jury has found, in *Winship*'s words, 'every fact necessary' to establish every element of the offense beyond a reasonable doubt. [Citation.]" (*Rose, supra,* 478 U.S. at pp. _ - _ [92 L.Ed.2d at p. 472, 106 S.Ct. at pp. 3107-3108].)

The question remains whether the *Figueroa* instructional error in this case should be evaluated on the *Chapman* standard, as in *Rose,* or reversed on a reversal per se standard. As noted above, the *Rose* court ruled *Sandstrom* error was not the equivalent to a directed verdict and thus concluded the *Chapman* test should be applied. The *Figueroa* court, on the other hand, concluded an instruction which characterizes something as a security under the corporate securities law was tantamount to a directed verdict. The trial court here proposed to give such an instruction.

Further, the instructional error in the present case is distinguishable from that in *Rose* v. *Clark.* ▮ The underlying purpose of the *Sandstrom* rule is to require the prosecution to prove beyond a reasonable doubt every fact necessary to constitute the crime charged. The error was in shifting that burden of proof to defendant to establish the absence of malice. Neverthe-

less, the issue of malice remained before the jury; the right to jury trial on that and other elements of the charged offense was not altogether denied. However, the trial court in this case *totally* deprived defendant Lawson of his right to jury trial on the element of "security."

 The instructional error here amounted to prohibited factfinding by the court and thus requires reversal. As the United States court explained in *Cabana* v. *Bullock* (1986) 474 U.S. 376, 385 [88 L.Ed.2d 704, 715, 106 S.Ct. 689, 696]: "Findings made by a judge cannot cure deficiencies in the jury's finding as to the guilt or innocence of a defendant resulting from the court's failure to instruct it to find an element of the crime."

 Recently, in *People* v. *Rodriguez* (1986) 42 Cal.3d 1005, 1010 [232 Cal.Rptr. 132], our high court reminded us the "[a]pplication of the per se standard requiring automatic reversal for a violation of a constitutional right normally is dependent upon the fundamental character of the right invaded or the impossibility of assessing prejudice." (Citing *People* v. *Bigelow* (1984) 37 Cal.3d 731, 744-745 [209 Cal.Rptr. 328, 691 P.2d 994].) We cannot describe the right to jury trial of each element of the crime in words other than "fundamental."

We recognize, as did the court in *People* v. *Figueroa, supra,* 41 Cal.3d at page 735, footnote 24, that in some situations this type of instructional error may not always require reversal. However, as noted at the outset, each charge of which the defendant was convicted included as a necessary element the existence of a security. Since the trial court determined as a matter of law that the purchase of accounts receivable constituted a security, a reversal of defendant's conviction on each count is required. Therefore, it is not necessary to address an additional issue raised by defendant, whether section 25110 is a strict liability crime.

The judgment is reversed.

Hamlin, J., and Ballantyne, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 14, 1987.