Filed 12/14/21  P. v. Carrillo CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DIEGO CARRILLO,<br><br>    Defendant and Appellant. | B311733<br><br>(Los Angeles County<br>Super. Ct. No. NA035470-01) |

APPEAL from an order of the Superior Court of Los Angeles County, Daniel J. Lowenthal, Judge.  Reversed and remanded with directions.

Sylvia W. Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Amanda V. Lopez and Heidi Salerno, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Diego Carrillo appeals the trial court's order denying his petition for vacatur of his 1999 conviction for willful premeditated murder and resentencing pursuant to Senate Bill No. 1437 (Senate Bill 1437) and Penal Code section 1170.95.[1]

On appeal, Carrillo contends he made a prima facie showing that he is entitled to relief under section 1170.95, subdivision (c), because the record demonstrates that the jury may have convicted him of murder on the theory that he aided and abetted a shooting at an inhabited dwelling, and that the murder was a natural and probable consequence of that offense.

We reverse the trial court's order and remand the matter for the trial court to issue an order to show cause and conduct a hearing.[2]

## FACTS

The facts of Carrillo's case, as set forth in the prior opinion of a different panel of this court, were as follows:

"Joanna Bush, an African American, lived in a Torrance apartment building within the territory of the Hispanic gang

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] Carrillo also contends that the trial court impermissibly engaged in fact-finding and conducted a substantial evidence review. Nothing in the record supports these contentions. However, we need not address Carrillo's additional arguments, because we reverse the trial court's order on a different basis.

Eastside Torrance. There was a tremendous amount of racial/ethnic tension in the area. On the evening of November 21, 1997, Bush hosted a birthday party attended by her family and friends. Defendant and Xavier Jaime were members of the Eastside Torrance gang. During the party at Bush's apartment, the two gang members fired approximately nine shots from an assault rifle into the Bush apartment, killing Francisco Lopez and injuring Jamar Kiper. The Bush family moved out of the apartment the next day. A few days later, the apartment bore graffiti indicating the Eastside Torrance gang had engaged in the shooting for racial/ethnic reasons. Defendant presented an alibi defense." (*People v. Carrillo* (Jul. 3, 2000, B132287) [nonpub. opn.].)

## PROCEDURAL HISTORY

### *Trial*

At trial, the People's case conceded there was only one gun used, but the prosecutor argued that the jury was not required to decide whether Carrillo, rather than Jaime, was the shooter. The jury could find Carrillo guilty of murder either as the shooter or as a direct aider and abettor of the murder. With respect to the aiding and abetting theory, the prosecutor did not argue that Carrillo could be found guilty as an aider and abettor under the natural and probable consequences doctrine.

The court orally instructed the jury regarding natural and probable consequences liability for principals under CALJIC No. 3.02 as follows:

"One who aids and abets another in the commission of a crime or crimes [(target crime)] is not only guilty of that crime, but is also guilty of any other crime [(nontarget crime)] committed by a principal which is a natural and probable consequence of the crimes originally aided and abetted.

"In order to find the defendant guilty of the crime alleged and counts 1 and/or 2 and/or 3, you must be satisfied beyond a reasonable doubt:

"1. The crime or crimes alleged was or were committed;

"2. The defendant aided and abetted that or those crimes;

"3. Co-principal in the crime committed the crime and or crimes alleged.

"You are not required to unanimously agree as to which originally contemplated crime [(target crime)] the defendant aided and abetted so long as you are satisfied beyond a reasonable doubt and you unanimously agree that the defendant aided and abetted the commission of an identified and defined target crime and that the crime or crimes alleged [(nontarget crime(s))] was or were a natural and probable consequence of the commission of that target crime."[3]

---

[3] The written instructions contained in the record vary from the oral instructions the court gave to the jury, as reported on the trial transcripts. Notably, the written version omits any reference to the natural and probable consequences doctrine. The written instruction states:

"One who aids and abets [another] in the commission of a crime [or crimes] is not only guilty of [that crime] or [those crimes], but is also guilty of any other crime committed by a principal.

4

The instruction omitted the fourth element of the standard CALJIC No. 3.02 instruction, which identifies the target offense: "4. The crime[s] of _____, [was] [were] a natural and probable consequence of the commission of the crime[s] of _____."

The jury was further instructed under 3.00 that aiders and abettors and direct perpetrators are "equally guilty" of the crimes they aid and abet or commit.

The jury convicted Carrillo of premeditated murder (§ 187, subd. (a) [count 1]), attempted premeditated murder (§§ 187/664 [count 2]), and shooting at an inhabited dwelling (§ 246 [count 3]). However, the jury found not true the allegations as to all

---

"In order to find the defendant guilty of the crimes alleged and counts 1 and/or 2 and/or 3, you must be satisfied beyond a reasonable doubt that:

"1. The crime [or crimes] alleged [was] or [were] committed;

"2. That the defendant aided and abetted [that] or [those] crimes;

"3. That a co-principal in the crime committed the crime and or crimes alleged.

"[You are not required to unanimously agree as to which originally contemplated crime the defendant aided and abetted, so long as you are satisfied beyond a reasonable doubt and unanimously agree that the defendant aided and abetted the commission of an identified and defined target crime."

The parties have not raised the issue of whether this discrepancy in the instructions is material to the issues, but instead argue regarding the import of the oral instructions. We confine our discussion to the oral instructions but note that the written instructions would have permitted the jury to convict Carrillo for any crime that the perpetrator committed, subjecting him to vicarious liability regardless of whether the murder (nontarget crime) was a natural and probable consequence of the target offense.

counts that Carrillo personally used a firearm. (§ 12022.5, subd. (a).) Carrillo was sentenced to a term of life without parole and a concurrent term of 25 years to life.

### *Section 1170.95 Petition*

"Effective January 1, 2019, the Legislature passed Senate Bill 1437 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1, subd. (f).) In addition to substantively amending sections 188 and 189 of the Penal Code, Senate Bill 1437 added section 1170.95, which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief.' (See [*People v.*] *Gentile*[ (2020)] 10 Cal.5th [830,] 843.)" (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)

After the enactment of Senate Bill No. 1437 (Senate Bill 1437), Carrillo filed a petition for vacatur of the murder conviction and resentencing pursuant to section 1170.95. The trial court appointed counsel, and the matter was briefed by the parties. The prosecution opposed the petition, arguing that the jury's verdicts made it clear that Carrillo had been convicted "on malice murder." More specifically, the prosecutor argued that the omission of the fourth element of CALJIC No. 3.02 foreclosed the possibility that the jury convicted Carrillo on a natural and probable consequences theory of liability, because "[f]or the natural and probable consequences doctrine to take effect, the

target crime the perpetrator aided and abetted must be identified." Carrillo's counsel filed the equivalent of a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436, raising no issues but requesting that the court independently review the record of conviction.

Following a hearing, the trial court denied the petition because Carrillo failed to demonstrate that he was prosecuted under a natural and probable consequences or felony murder theory of liability, and was thus ineligible for relief as a matter of law. The trial court ruled: ". . . I reviewed the pleadings, and the court file, and the record of conviction. And the record of conviction in this case does reflect that the People argued that the defendant was the shooter and/or aided and abetted the co-defendant in committing the shooting. [¶] The record of conviction does not reflect that the jury was instructed on either a felony murder or the natural and probable consequences doctrine. Parenthetically, for the natural and probable consequence doctrine to take effect, the target crime the defendant aided and abetted has to be identified here. It wasn't." [¶] 1170.95 only applies to felony murder and natural and probable consequences doctrine. Because the defendant in this case was not convicted under either theory, 1170.95 does not apply. So, accordingly, the gentleman's petition is denied."

Carrillo timely appealed.

## DISCUSSION

### *Legal Principles*

#### Section 1170.95

Pursuant to section 1170.95, "[a] person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts." (§ 1170.95, subd. (a).) "[A]n offender must file a petition in the sentencing court averring that: '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.' (§ 1170.95, subds. (a)(1)–(3); see also § 1170.95 subd. (b)(1)(A).)" (*Lewis*, *supra*, 11 Cal.5th at pp. 959–960.)

"Where the petition complies with subdivision (b)'s three requirements, . . . the court proceeds to subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief. (§ 1170.95, subd. (c).)" (*Lewis*, *supra*, 11 Cal.5th at p. 960.) "[A]t the prima facie stage, a petitioner's allegations should be accepted as true, and the court should not make credibility

8

determinations or engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]" (*Id.* at p. 974.) "If the trial court determines that a prima facie showing for relief has been made, the trial court issues an order to show cause, and then must hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.' (§ 1170.95, subd. (d)(1).)" (*Id.* at p. 960.)

## **Natural and Probable Consequences Aiding and Abetting**

"Under California law, a person who aids and abets a confederate in the commission of a criminal act is liable not only for that crime (the target crime), but also for any other offense (nontarget crime) committed by the confederate as a 'natural and probable consequence' of the crime originally aided and abetted. To convict a defendant of a nontarget crime as an accomplice under the 'natural and probable consequences' doctrine, the jury must find that, with knowledge of the perpetrator's unlawful purpose, and with the intent of committing, encouraging, or facilitating the commission of the target crime, the defendant aided, promoted, encouraged, or instigated the commission of the target crime. The jury must also find that the defendant's confederate committed an offense other than the target crime, and that the nontarget offense perpetrated by the confederate was a 'natural and probable consequence' of the target crime that

9

the defendant assisted or encouraged." (*People v. Prettyman* (1996) 14 Cal.4th 248, 254 (*Prettyman*).)

*Analysis*

Carrillo contends he made a prima facie showing that he is entitled to relief under section 1170.95, subdivision (c), because the record demonstrates that the jury may have convicted him of murder on the theory that he aided and abetted a shooting at an inhabited dwelling, and that the murder was a natural and probable consequence of that offense.  Carrillo bases his claim on the combination of several facts, specifically:  (1) the jury's not true finding with respect to the firearm use allegations demonstrates that the jury may have concluded he was not the perpetrator, but was instead liable as an aider and abettor; (2) the jury was instructed on natural and probable consequences liability for aiders and abettors under CALJIC No. 3.02, and may have found him guilty under that theory rather than on the theory that he directly aided and abetted the murder; and (3) the jury was instructed under CALJIC No. 3.00 that aiders and abettors and direct perpetrators are "equally guilty" of the crimes they aid and abet or commit, and may have found him guilty of willful premeditated murder although he did not possess the requisite intent.

**The Jury's Not True Finding on the Firearm Allegations**

Carrillo first contends that, although the jury's not true finding with respect to the firearm use enhancements did not

10

foreclose the possibility that the jury found him guilty as a direct perpetrator, the not true finding also did not foreclose the possibility that the jury found him guilty of murder as an aider and abettor.  We agree.

In California, the jury is not required to decide unanimously whether a defendant is liable as an aider and abettor or as the direct perpetrator to convict the defendant of murder.  (*People v. Santamaria* (1994) 8 Cal.4th 903, 918–919.) If the jurors agreed that Carrillo was guilty of murder but could not reach a consensus regarding whether he was the perpetrator or an aider and abettor, "this would allow the jury to convict of murder but would require the not true verdict on the enhancement allegation." (*Id.* at p. 918.)

### CALJIC No. 3.02 Natural and Probable Consequences

Carrillo argues that, because the trial court instructed the jury that he could be guilty of a charged crime (murder and/or attempted murder and/or shooting at an inhabited dwelling) if it was a natural and probable consequence of aiding and abetting a different and unidentified crime, the jury may have convicted him of murder under the theory that he aided and abetted a shooting at an inhabited building (which requires only general intent) and the murder was a natural and probable consequence of that crime.

The People first contend that the jury could not have found Carrillo guilty of murder as the natural and probable consequence of aiding and abetting a shooting at an inhabited dwelling because, (1) as given, CALJIC No. 3.02 did not define the target crime (shooting at an inhabited dwelling) and (2) the

11

prosecutor did not argue natural and probable consequences liability at trial.  In support of this argument, the People cite *Prettyman, supra,* 14 Cal.4th 248, which held that a trial court has a sua sponte duty to include an instruction defining the target crime when the prosecution relies on the natural and probable consequences doctrine.  The People reason as follows: because the target crime was not identified in the instruction given by the court, and the prosecutor did not argue the natural and probable consequences theory, the jury could not have relied on this theory in reaching its verdict.  The People read *Prettyman* as holding that, under these circumstances, CALJIC No. 3.02 either does not relate to the natural and probable consequences doctrine and/or the instructional error is harmless—in either case, the People argue the jury should be found not to have relied on the doctrine to convict Carrillo of murder.

This is incorrect.  The failure to identify a specific target crime in the reading of CALJIC No. 3.02 did not transform the nature of the instruction into addressing something other than the natural and probable consequences doctrine; it instead broadened the reach of the natural and probable consequences doctrine to include murder liability for aiding and abetting any unspecified criminal behavior.  Indeed, the *Prettyman* court explained precisely this point: omitting the element of the instruction identifying the target crime is error because it impermissibly allows the jury to convict the defendant of murder based on its belief that "the defendant intended to assist and/or encourage unspecified 'nefarious' conduct" of which murder was a natural and probable consequence.  (*Prettyman, supra*, 14 Cal.4th at p. 268.)  Here, the jury was instructed on natural and probable consequences liability in error—both because the prosecution did

12

not rely on the theory and because a crucial element was omitted—but it was instructed on the theory nonetheless. We presume that the jury understood the natural and probable consequences theory of murder liability to be a valid theory of murder, as it was instructed. (See *People v. Lawson* (1987) 189 Cal.App.3d 741, 748 ["the appellate court presumes the jurors faithfully followed the trial court's directions, including erroneous ones"].) Indeed, as the People point out in the respondent's brief, prior to 1996, the prosecution was not required to identify target crime(s) in the instructions, yet defendants could be, and were, convicted of murder as aiders and abettors under the natural and probable consequences doctrine. (*Prettyman*, *supra*, at pp. 257–258.)

It is irrelevant for our purposes that giving CALJIC No. 3.02 in error may have been harmless because the prosecution did not proceed on that theory, as the court in *Prettyman* concluded under similar circumstances. (*Prettyman*, *supra*, 14 Cal.4th at pp. 270–274.) At the eligibility stage of the section 1170.95 inquiry, we take Carrillo's assertions as true unless a fact in the record refutes them as a matter of law. (*Lewis*, *supra*, 11 Cal.5th at p. 971.) Here, the fact that the *prosecutor* did not argue the natural and probable consequences doctrine does not establish, as a matter of law, that the *jury* did not rely on the trial court's instruction that it could convict Carrillo because murder is the natural and probable consequence of shooting at an inhabited dwelling. Accordingly, Carrillo is not barred from eligibility to seek relief under section 1170.95.

The People next attempt to neutralize the effect of CALJIC No. 3.02 by reading the instruction in the conjunctive. The People argue that the instruction meant "in order to find

appellant guilty of murder, attempted murder, and shooting into an occupied dwelling (counts 1-3), the jury must be satisfied beyond a reasonable doubt that the crimes of murder, attempted murder, and shooting into an occupied residence were committed, appellant aided and abetted those crimes, and that a co-principal in that crime committed the crime of murder, attempted murder, and shooting into an occupied dwelling."

This is a mischaracterization of the instruction, which is written in the disjunctive ("counts 1 and/or 2 and/or 3"), and allowed the jury to individually assess each crime and find Carrillo guilty as an aider and abettor if "the defendant aided and abetted the commission of an identified and defined target crime and . . . the crime or crimes alleged (murder and/or attempted murder and/or shooting at an inhabited dwelling) was or were a natural and probable consequence of the commission of that target crime." The only crimes "identified" and "defined" in the instructions were the offenses charged: murder, attempted murder, and shooting at an inhabited dwelling. Thus, the jury could have found that Carrillo intended to aid and abet a shooting at an inhabited dwelling and was guilty of murder as a natural and probable consequence of that crime.

## CALJIC No. 3.00 Principals "Equally Guilty"

Finally, Carrillo contends that, because the court instructed the jury that perpetrators and aiders and abettors are "equally guilty" under CALJIC No. 3.00, the jury could have found him guilty of premeditated willful murder without finding that he possessed the requisite specific intent. The crime of shooting at an inhabited dwelling required only a general intent

14

to willfully and maliciously discharge a firearm at an inhabited dwelling under CALJIC No. 9.03.  If the jury found that Carrillo was guilty of murder as a natural and probable consequence of shooting at an inhabited dwelling, he need only possess the general intent for that crime and yet be "equally guilty" of first degree murder.

The People characterize the argument as an impermissible attack on trial error and contend that, even if the argument was permitted, any error would be harmless.  We reject the People's contention.  As Carrillo argues, he is not attempting to correct trial errors by filing a section 1170.95 petition.  He is arguing that because certain instructions were given—whether appropriately or in error—the jury would have understood that if it found he intended to aid and abet a shooting at an inhabited dwelling, and found that willful, premeditated murder was a natural and probable consequence of that offense, Carrillo and the perpetrator would be "equally guilty" of willful, premeditated murder.  The jury was instructed on the equal guilt of perpetrators and aiders and abettors, so it is possible that Carrillo was convicted of willful premeditated murder on that basis.  As our Supreme Court has recently emphasized in explaining the operation of section 1170.95, "the 'prima facie bar was intentionally . . . set very low.'" (*Lewis, supra*, 11 Cal.5th at p. 972.)

In sum, it cannot be determined from the record of conviction that Carrillo is ineligible for relief without evaluating the facts; he has therefore made a prima facie showing of entitlement to resentencing under section 1170.95.  The court must issue an order to show cause and hold a hearing, at which it

may evaluate new and/or additional evidence offered by the parties as well as record facts.  (§ 1170.95, subds. (c) & (d).)

## DISPOSITION

We reverse the trial court's order and remand for the court to issue an order to show cause and conduct a hearing pursuant to section 1170.95, subdivisions (c) and (d).


MOOR, J.


We concur:


RUBIN, P.J.


BAKER, J.